THE STATE OF OHIO, APPELLEE, *v.* BOWMAN ET AL., APPELLANTS.

(No. 3292—Decided January 14, 1969.)

*Mr. Lee C. Falke*, prosecuting attorney, and *Mr. Herbert M. Jacobson*, for appellee.

*Mr. John R. Ensley* and *Mr. Eugene D. Smith*, for appellants.

KERNS, J. This cause originated in the Court of Common Pleas of Montgomery County wherein the defendants, appellants herein, Jerry Bowman, Chester Hoover and Harley David Hinkley, were tried and convicted of violating Section 2907.11, Revised Code, which provides that:

"No person shall have or keep in his possession tools, implements, or other things used by burglars for house breaking, forcing doors, windows, locks, or buildings, or other places where goods, wares, merchandise, or money

are kept, with the intention of using such tools or implements burglariously."

At about 3:15 a. m. on February 17, 1967, Officers Mundhenk and Haley of the Dayton Police Department were on patrol in the area of Mound and Third Streets in the city of Dayton. While waiting at the stop sign on Mound Street, they observed a 1957 Buick station wagon with three occupants proceeding eastwardly on Third Street. A loud muffler on the Buick attracted the attention of the officers, and they followed the car to a point on Interstate Route 75 South where the car was stopped for the purpose of giving the operator a ticket for an anti-noise violation.

In order to assist the driver of the stopped vehicle in finding his identification, Officer Mundhenk directed his flashlight toward the interior of the car where he noticed a brown canvas bag with two large crowbars visibly attached thereto. At this point, the driver of the automobile was ordered out of the car and was "frisked." A penlight was found in his pocket, which had an end covered or encircled with tape.

The driver, Hoover, was then taken to the police cruiser, whereupon Hinkley and Bowman were asked to step out of the Buick. They were "frisked" and likswise removed to the police cruiser.

Officer Mundhenk returned to the station wagon and searched the brown bag which had "several handles on top and two large crowbars attached to the side." Noting that the bag contained a number of tools, Officer Mundhenk asked Officer Haley to observe the tools, after which Officer Haley advised the three defendants of their constitutional rights.

Thereafter, a further search of the bag and the automobile disclosed a tear-gas gun, two crowbars, a nest of saws, a six-pound sledge hammer, a three-pound sledge hammer, a masonry-type hammer, high-speed drills, punches, two pencil-type flashlights, a pair of brown gloves, a fourteen-inch screwdriver, gas pellets, a Kentucky license plate, and a business card of one Fred G. Gurekunsi, who

apparently provides "keys and locks for every need." The evidence further discloses that some of these items were altered in such a manner as to make them particularly useful in the commission of a burglary.

The defendants made a timely motion to suppress any evidence acquired as a result of the search of the station wagon, and, after hearing testimony upon the motion, the trial court admitted the evidence, in the form of seventeen exhibits, at the trial of the case.

The defendants argue generally that evidence acquired as a result of an unreasonable search must be suppressed, and, in the abstract, this contention is no longer a proper subject of serious debate. *Mapp* v. *Ohio*, 367 U. S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684; *State* v. *Bernius*, 177 Ohio St. 155. However, the facts of a given case must give justification to the application of the rule.

The governing principles to be applied in cases of this kind are discussed in *Beck* v. *Ohio*, 379 U. S. 89, 13 L. Ed. 2d 142, 85 S. Ct. 223, where it is said:

"'* * * The constitutional validity of the search in this case, then, must depend upon the constitutional validity of the petitioner's arrest. Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. *Brinegar* v. *United States*, 338 U. S. 160, 175-176; *Henry* v. *United States*, 361 U. S. 98, 102. 'The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating * * * often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.' *Brinegar* v. *United States, supra*, at 176.''

When a person is lawfully arrested, the police have the right, without a search warrant, to make a contempo-

rary search for weapons or for the fruits of or implements used to commit a crime. *State* v. *Call,* 8 Ohio App. 2d 277. Hence, the critical issue in the present case is whether the police officers had "probable cause" for initiating the arrest of the defendants. Here, the large brown bag to which the crowbars were attached was not the product of search. These items were visible to the officers without benefit of search, and their presence in the defendants' constructive possession in the station wagon, when considered with all other concomitant facts and circumstances existing at the time and place of apprehension, shows probable cause for the subsequent arrest of the defendants. While a crowbar has no inherently criminal characteristics, there can be no doubt that the presence of two thirty-six inch crowbars attached to a canvas bag in an automobile with three male occupants and situated on the berm of a highway at 3:15 a. m. would provide a thought-provoking setting for any dutiful policeman.

Whether Officer Mundhenk originally used his flashlight for the purpose of assisting the driver of the station wagon or for the purpose of viewing the inside of the vehicle is a disputed question of fact in this case. But, in any event, the use of artificial light cannot be equated with unreasonable search. *United States* v. *Callahan*, 256 F. Supp. 739; *Dorsey* v. *United States*, 372 F. 2d 928. The rule of the *Mapp case*, which emanated from an unusual and extreme factual pattern, has provided the spawning ground for a myriad of eccentric ideas, but it is inconceivable that this rule requires prudent police officers to masquerade as fools in situations where their own personal safety might reasonably be involved. In our opinion, the officers in the present case acted as any reasonable person would have acted under the same or similar circumstances.

The first and second assignments of error, both of which pertain to the overruling of the motion to suppress, will be overruled.

For their third assignment of error, the defendants contend that the trial court erred in permitting a police officer to testify as an expert witness as to whether the

tools admitted in evidence were intended to be used burglariously.

With reference to this assignment of error, the record discloses that Detective Jack Peake, who was a member of the Dayton Police Department for over twenty years and in charge of the burglary squad for over eight years, testified in some detail concerning the possible uses of the tools found in the station wagon and explained the reason for the altered condition of some of the tools. Then, at the conclusion of his testimony, the trial court permitted him to give an opinion as to whether the tools were intended to be used burglariously.

While the form of the question was such as to encroach upon the right of the jury to determine ultimate facts, it is highly improbable that the opinion of Officer Peake added anything to his previous testimony. A complete review of his testimony completely negates any possibility that this single answer had any material effect upon the outcome of this case. The substance of his concluding opinion had already been firmly implanted in the minds of the jurors. Hence, the third assignment of error will be overruled.

The fourth assignment of error challenges the sufficiency of the evidence presented to sustain the conviction. Particularly, the defendants contend that evidence is lacking upon the element of intent.

In a case of this kind, it would be extremely difficult to present direct evidence upon the element of intent. However, intent may reasonably be inferred from the circumstances surrounding the possession of the tools. Undoubtedly, the alteration of standard tools to accomplish a specific purpose lends itself to a burglarious intent. See *State* v. *Rucks*, 74 Ohio Law Abs. 449. And it is not necessary that the prosecution prove the time and place when the tools will be used. See *Martin* v. *State*, 14 C. C. (N. S.) 138. See, also, 103 A. L. R. 1318.

In our opinion, the evidence in the present case is such as to sustain each essential element of the crime by the requisite degree of proof.

The defendants also contend that Section 2907.11, Revised Code, is unconstitutional in that it is void for vagueness. This statute has been in substantially the same form since its enactment, and it is not substantially unlike statutes of other jurisdictions governing the possession of burglar tools. While the statute renders proof difficult in some cases, its language is not vague, and we perceive no merit in the present challenge to its constitutionality.

Noticeably, the defendants did not take the stand to explain the presence of the tools in their automobile, and the charge of the court in this case was fair, clear, and complete.

This court finding no prejudicial error in the record, the judgment of the trial court will be affirmed.

*Judgment affirmed.*

CRAWFORD, P. J., and SHERER, J., concur.