PATTERSON *v.* STATE OF INDIANA.

[No. 868-S-124. Filed February 20, 1970. Rehearing denied April 15, 1970.]

*Isadore D. Rosenfeld,* South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *Curtis C. Plopper,* Deputy Attorney General, for appellee.

GIVAN, J.—Appellant was charged in St. Joseph County with the crime of robbery, which was alleged to have been perpetrated on the 15th day of November, 1966. Trial resulted in a verdict of guilty of the included crime of theft.

On the 21st day of November, 1966, the appellant was apprehended by an Ohio State Police Officer while driving his automobile on the Ohio State Turnpike. The arresting officer had just received police radio communication that there had just been an armed robbery at the Exit 6 Motel, and that the subject believed to be involved entered the turnpike at Exit 6. He was described as a tall negro male driving a light blue 1963 Pontiac. Shortly after receiving this communication the officer saw the defendant, who fit the description, driving a light blue 1963 Pontiac some ten miles west of Exit 6. As he was radioing for aid to apprehend the defendant, the defendant stopped his vehicle, whereupon the officer asked to see appellant's toll ticket. The ticket showed that appellant had entered at Exit 6. The officer then searched the person of the defendant, finding a tear gas gun. Under Ohio law this apprehension and search of the defendant constituted an arrest. The Court of Common Pleas of Ohio has stated that:

> "Arrest simply means to deprive a person of his liberty by legal authority. Thus any restriction of the right of locomotion the purpose of which is to apprehend or detain such person any reasonable length of time in order that he

be forthcoming to answer an alleged or suspected crime is an arrest." *State* v. *Coles* (1969), 48 Ohio Opinions 2d 309, 249 N. E. 2d 553, 557.

The officer making this arrest had probable cause by reason of police radio communication to believe that the appellant had just perpetrated a felony. *Manson et al.* v. *State* (1967), 249 Ind. 53, 229 N. E. 2d 801.

The fact that the appellant was later advised by police officers that he was also being arrested for the possession of a concealed weapon does not alter the fact that his initial arrest was based solely on the probable cause of his just having committed a felony. Immediately following appellant's arrest other officers arrived on the scene and a search of appellant's car was conducted. As a result of this search articles were found which had been obtained in the Exit 6 motel robbery. In addition, a checkbook and a letter were found which had been the subject of the robbery in St. Joseph County which had taken place some five days previously and which is the subject of the prosecution at bar. The appellant moved to suppress the evidence so obtained on the ground that the search was illegal and in violation of his constitutional rights against unlawful search and seizure.

The appellant argues that the Indiana courts should hold the search unlawful because a trial court in Ohio suppressed the evidence on the ground of an unlawful search. However, an examination of the Ohio authorities discloses the following:

"When a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporary search for weapons or for the fruits of or implements used to commit a crime. *State* v. *Bowman,* 17 Ohio App. 2d 195, 245 N. E. 2d 380. The rule is extended to motor vehicles but the justifications therefor are absent where a search is remote in time and place from the arrest. *State* v. *Call,* 8 Ohio App. 2d 277, 220 N. E. 2d 130, *Preston* v. *United States,* 376 U. S. 364, 84 S. Ct. 881." *State* v. *Coles, supra.*

We do not feel bound by a decision of an Ohio trial court.

Ohio and Indiana are both required to make such determinations in keeping with the decisions of the Supreme Court of the United States. *Elkins* v. *United States* (1960), 364 U. S. 206, 224, 80 S. Ct. 1437, 4 L. Ed. 2d 1669.

Great weight is placed by the appellant on the case of *Preston* v. *U. S.* (1964), 376 U. S. 364, 84 S. Ct. 881, 11 L. Ed. 2d 777. The *Preston* case was written by Justice Black. The factual situation was that three men were arrested in a parked car on a charge of vagrancy. The men were taken to jail, and the car was towed to a garage. Soon after the men had been booked at the station, police officers went to the car and forced entry into the trunk through the back seat of the car where they found stocking masks, ropes, pillow slips and illegally manufactured license plates. Justice Black held that under this situation the search was illegal for the reason that it was too remote in time from the arrest and that the articles found in the search were not directly connected with the arrest.

In the case of *Cooper* v. *California* (1967), 386 U. S. 58, 87 S. Ct. 788, 17 L. Ed. 2d 730, a similar factual situation was again presented to the Court and Justice Black again wrote the opinion for the Court. The facts in the *Cooper* case are that Cooper was arrested for a violation of the narcotics law and his car impounded in connection with the arrest. Following the impounding of Cooper's car and while it was in the police garage, it was searched without a warrant and narcotics found in the glove compartment. The California District Court of Appeals held that they were bound by the holding in the *Preston* case, and that the search was, therefore, unlawful. However, they held the unlawful search did not "result in a miscarriage of justice" and refused to reverse the case. The Supreme Court granted certiorari and Justice Black, who had written the *Preston* case, reviewed the facts in that case and stated that they are not applicable to the *Cooper* case, pointing

out that Preston's arrest was for vagrancy and that the later search of his car was not connected directly with this arrest, and the goods found pursuant to search had nothing to do with his arrest on the charge of vagrancy. He points out in affirming the *Cooper* case that the search was in fact legal because Cooper had been arrested for narcotics violation, and that the car was seized and searched because of the crime for which they arrested the petitioner.

The Supreme Court of the United States in the recent case of *Chimel* v. *California* (1969), 395 U. S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685, cited the *Preston* case, and overruled both *Rabinowitz* and *Harris* in holding that a search must be confined to the person and his immediate surroundings. However, in a footnote the Court points out:

> "Our holding today is of course entirely consistent with the recognized principle that, assuming the existence of probable cause, automobiles and other vehicles may be searched without warrants 'where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' "

In the case at bar Patterson was arrested by a highway patrol officer within minutes after the officer had received word by police radio that a man matching Patterson's description, driving an automobile fitting the description of Patterson's car, had just robbed a motel at Exit 6. The officer had probable cause to believe that Patterson had just committed the robbery of the motel. Patterson was put under arrest and handcuffed immediately for the crime of robbery. Under the circumstances revealed by the record before us, the police officers had the right to search the vehicle at that time since they had probable cause to believe that it had just been used in accomplishing the robbery. (See *Chimel* footnote, *supra.*) The result of their search was to find articles taken in the robbery of the motel in Ohio and in the earlier robbery charged in this case.

The fact that the evidence used in the case at bar was obtained by a search after a lawful arrest for another offense does not preclude its use in the prosecution for an offense other than that for which the arrest was made. *Rucker* v. *State* (1948), 225 Ind. 636, 639, 77 N. E. 2d 355.

The search in this case was proper under the above cited cases of the Supreme Court of the United States.

The trial court is, therefore, affirmed.

Hunter, C.J., and Arterburn, J., concur; Jackson, J., dissents with opinion in which DeBruler, J., concurs.

### DISSENTING

JACKSON, J.—I cannot agree with the conclusions reached in the majority opinion and dissent thereto.

Appellant was charged by affidavit signed by Helen Dziubinski, made on information and belief and filed November 28, 1966, with the crime of robbery by putting in fear. The affidavit, omitting formal parts, signatures and jurat, reads in pertinent part as follows:

"That on or about the 15th day of November, 1966, at and in the County of St. Joseph, State of Indiana, WAYMAN PATTERSON did take from the person of Helen Dziubinski articles of value, to-wit: Twenty Eight ($28.00) Dollars in lawful currency of the United States of America, a certain handbag valued at Five ($5.00) Dollars, two shotguns each valued at approximately One Hundred ($100.00) Dollars, two rifles each valued at approximately One Hundred ($100.00) Dollars, a certain twenty-one jewel Cyma wristwatch valued at One Hundred ($100.00) Dollars, and a Lord Nelson men's men's calendar watch valued at Twelve ($12.00) Dollars, by putting said Helen Dziubinski in fear while she was then and there in the Westwood Motel, located at 25200 West Western Avenue, in Warren Township, County and State aforesaid, contrary to the form of Statute in such cases made and provided and against the peace and dignity of the State of Indiana."

On arraignment to the above charge appellant stood mute and the court entered thereto for the appellant a plea of not guilty, to the entry of which plea no objection or exception was made. Trial by jury was had, beginning November 9, 1967. On November 14, 1967, the jury returned its verdict finding appellant "* * * guilty of the included crime of Theft * * *."

The court thereupon ordered a pre-sentence investigation made by the chief adult probation officer for said county. The same being set for consideration on November 28, 1967. Judgment was rendered on the verdict November 28, 1967; the court on the verdict of the jury found the appellant "* * * guilty of the included crime of Theft * * *," and sentenced appellant to the custody and control of the Warden of the Indiana State Prison for a period of not less than one nor more than ten years.

A motion for new trial was filed by appellant December 14, 1967; such motion encompasses thirty-four (34) pages of record and hence is omitted in the interest of brevity. The writer hereof is of the opinion appellant's counsel did not omit any available grounds in said motion. Appellant's motion for a new trial was overruled February 14, 1968. June 24, 1968, appellant's trial counsel requested and obtained permission from the court to withdraw from the case. July 29, 1968, the court appointed present counsel to perfect appeal herein. Appellant's sole Assignment of Errors is: "1. The Court erred in overruling appellant's motion for a new trial."

From the evidence adduced at trial it appears that on or about November 15, 1966, the Westwood Motel in St. Joseph County, Indiana was robbed by a man described as a well dressed Negro approximately six feet two inches tall. The owner and operator of the motel testified that the man held a gun on her and ordered her into the living quarters of the motel. He told her to lie down on a bed and asked her about her money. She stated that she handed him an envelope con-

taining approximately $28.00. He then pushed her into the bathroom. The witness stated that while she was in the bathroom she could hear the man removing several guns from a gun rack in the hall way of the residence. A few moments later the victim emerged from the bathroom and saw the man, whom she identified as the appellant, leaving the kitchen and going through the motel office carrying a rifle and a shotgun, both of which had been in the gun rack in the hallway. She stated that her purse was missing after the man fled, and that it contained personal items including a checkbook and a letter to her son.

Another witness, James L. Shingler, testified that he was employed as a patrolman for the Ohio Toll Road Department, and was responsible for law enforcement on the section of the Ohio Turnpike to which he was assigned. The witness stated that early in the morning of November 21, 1966, he received a radio call advising him of a hold-up at the Exit 6 Motel, located in Sandusky County, Ohio. The suspect was described as a tall Negro male who was believed to be driving a light blue, 1963 Pontiac which had entered the turnpike at Exit 6. The witness testified that within eight to ten minutes of receiving the report he saw a car matching the description of the suspect's car. Patrolman Shingler said that he pulled beside the moving car to get a look at the driver, and then dropped back behind it in order to get assistance prior to stopping it. However, when the witness dropped behind the car the driver pulled off the road and stopped.

The driver of the car, who patrolman Shingler identified as the appellant, got out of his car. The witness got out of the patrol car, went up to the appellant, and asked to see his toll ticket. The toll ticket indicated that the appellant entered the turnpike at Exit 6. The witness testified that he then searched the appellant and found a .22 caliber gas gun, a four inch pocket knife, and approximately $220.00 on the appellant's person.

At about this same time another patrolman arrived. Although the evidence is somewhat conflicting, it appears that the second patrolman on the scene, patrolman Fisher, after being shown the tear gas gun taken from appellant, placed the appellant under arrest for carrying a concealed weapon. Patrolman Fisher then searched the inside of the car and found a .32 caliber revolver in the glove compartment.

Shortly thereafter a third patrolman arrived at the scene. While Fisher watched the appellant, who had been placed in handcuffs, Shingler and the third patrolman took the car keys from the appellant and searched the trunk of the car. In the trunk they found several items taken from the Exit 6 Motel, as well as certain items belonging to the owners of the Westwood Motel and listed as taken from the motel during the holdup on November 15, 1966.

On July 13, 1967, the appellant, through his attorney, filed a motion to suppress the evidence obtained by means of the search. This motion, omitting formal parts, reads as follows:

"Wayman Patterson, first being duly placed upon his oath according to law, for his Verified Motion in the above entitled cause to suppress certain alleged evidence and the fruits or deriivitive uses thereof now in the possession of the State of Indiana, which said alleged evidence the State of Indiana may produce in the trial of said cause, deposes and says:

1. That he is the defendant in the above entitled cause and, on or about the 21st day of November, 1966, while lawfully driving his automobile upon the Ohio Turnpike in the State of Ohio, was arrested by an officer of the Ohio State Highway Patrol. That said officer conducted a contemporaneous search of the defendant and upon finding a gas gun on his person arrested him for carrying a concealed weapon. That said officer and other officers then handcuffed and placed defendant in a squad car and, after doing so, the officers conducted, without a warrant or any attempt to obtain one, an unlawful search of the defendant's automobile contrary to the laws of the State of Indiana, the State of Ohio and the Constitution of the United States, and subsequent thereto seized from the trunk of said automobile one

checkbook and a letter written by one Helen Dziubinski. That said unlawfully obtained checkbook and letter with said Helen Dziubinski's name inscribed thereon were used by the Ohio authorities to ascertain the identity and locacation of said Helen Dziubinski where no probable cause existed that any crime had been committed.

2. That upon said information, said Helen Dziubinski was contacted by telephone and was informed that said articles bearing her name had been found in the defendant's automobile and that the defendant was presently in the custody of the Ohio authorities.

3. That as a result of this information, said Helen Dziubinski traveled to the State of Ohio in order that she might identify the defendant as the person who allegedly robbed her of these items on the 15th day of November, 1966, and that during a police 'line-up' in the State of Ohio said Helen Dziubinski did identify the defendant as the person who robbed her of these on the 15th day of November, 1966.

4. That after said Helen Dziubinski made the above mentioned identification of the defendant, she traveled back to St. Joseph County, State of Indiana, where she did sign an affidavit charging that the defendant committed robbery on her by putting her in fear and that upon the basis of said affidavit a warrant for the defendant's arrest was issued by the Honorable E. Spencer Walton causing the defendant to be transported to St. Joseph County, State of Indiana, in order that he face trial on said robbery charge.

5. That defendant contends that the said identification of the defendant by said Helen Dziubinski was derived directly from the unlawfully seized checkbook and letter and is therefore tainted with the illegality of the unlawful search and seizure. That without the unlawful search and seizure of the checkbook and letter, the identity and whereabouts of said Helen Dziubinski would not have been discovered and said Helen Dziubinski would not have made the subsequent identification of the defendant as the person who allegedly robbed her.

WHEREFORE, this affiant and defendant moves the court to suppress all evidence obtained by any police officer of the State of Ohio in connection with the search of the trunk of the defendant's automobile and to suppress the fruits or deriivitive uses of any unlawfully seized evidence including the testimony of said Helen Dziubinski and further to disallow the introduction of all said evidence in trial of said cause."

On August 10, 1967, the trial court denied the appellant's motion to suppress the evidence. The denying of appellant's motion, the overruling of appellant's objections to testimony concerning the evidence discovered in the trunk, and the denying of renewed motions to suppress the evidence and motions to strike testimony involving the evidence were all alleged as grounds of error in the appellant's motion for a new trial. On appeal the appellant's argument boils down to the contention that the trial court erred in refusing to suppress the allegedly illegally seized evidence, and in allowing various witnesses to testify, over appellant's objections, as to the evidence.

The State, at page 7 of its brief states: "It is axiomatic that a search and seizure incident to a lawful arrest does not violate either the United States or the Indiana Constitution."

In the case at bar no question is raised as to the validity of the appellant's arrest. The sole question which we must decide is whether the search of the trunk of the appellant's car, and the seizure of the items contained therein, without a warrant and after the appellant had been searched, placed under arrest for carrying a concealed weapon, handcuffed and was out of his car and in the custody of three armed police officers, constituted a valid search and seizure.

This question involves an area of the law which, until very recently, was fraught with vague, somewhat general, and at times conflicting statements by various courts. No doubt because of the existing confusion generated in part by some of its earlier opinions. See e.g. *Weeks* v. *United States* (1914), 232 U. S. 383, 58 L. Ed. 652, 34 S. Ct. 341; *Agnello* v. *United States* (1925), 269 U. S. 20, 70 L. Ed. 145, 46 S. Ct. 4; *Harris* v. *United States* (1947), 331 U. S. 145, 91 L. Ed. 1399, 67 S. Ct. 1098; *Trupiano* v. *United States* (1948), 334 U. S. 699, 92 L. Ed. 1663, 68 S. Ct. 1229; and *Rabinowitz* v. *United States* (1950), 339 U. S. 56, 94 L. Ed. 653, 70 S. Ct. 430, the Supreme Court of the United States, on June 23, 1969, handed

down *Chimel* v. *California* (1969), 395 U. S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034.

In *Chimel* three police officers went with an arrest warrant to the petitioner's home, where they identified themselves to the petitioner's wife. They were then allowed to enter the house to await the petitioner's return from work. When the petitioner entered the house some ten or fifteen minutes later he was placed under arrest, and the officers asked his permission to search the house. He denied their request. However, on the basis of the lawful arrest, the police, accompanied by the petitioner's wife, searched the entire house although they did not have a search warrant.

In concluding that the warrantless search of the petitioner's home was illegal, the Supreme Court in *Chimel* expressly rejected the broad implication of *Rabinowitz* that warrantless search incident to a lawful arrest is itself lawful. The Court went on to hold that a warrantless search incident to a lawful arrest is only valid where limited to an area from within which the arrestee could obtain a weapon to endanger the arresting officers, or destroy or conceal evidence. A search beyond this area, however, was held to be in violation of the Fourth and Fourteenth Amendments.

In determining the permissible scope of a warrantless search incident to a lawful arrest, the Supreme Court laid down the following guidelines:

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person ar-

rested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." 23 L. Ed. 2d 694.

From the above passage it is clear that a warrantless search incident to a lawful arrest can only be justified in order to (1) protect the arresting officer from injury, (2) prevent frustration of the arrest, or (3) prevent destruction of the evidence. However, such a search is lawful only so long as it extends to an "area from within which he might gain possession of a weapon or destructible evidence."

Thus, a search going beyond the "immediate control" of the arrestee is unlawful unless accompanied by a valid search warrant. This is true even though the search was made pursuant to a lawful arrest warrant. *Chimel* v. *California, supra.* As was said by the Supreme Court in *Chimel:*

"There is no comparable justification however, for routinely searching rooms other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well recognized exceptions, may be made *only under the authority of a search warrant."* (Emphasis supplied) 23 L. Ed. 2d 694.

In the case at bar the appellant, at the time of the search of the car trunk, had been previously searched and placed under arrest, was handcuffed, and was held under guard by a police officer and several feet distant from the car being searched. Applying the tests set out in *Chimel* we can only conclude that the search was of an area that was not within the "immediate control" of the appellant. Just as in *Chimel,* the search in the case at bar "went far beyond the (appellant's) person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him."

The majority opinion places great reliance on the case of *Cooper* v. *California* (1967), 386 U. S. 58, 17 L. Ed. 2d 730,

87 S. Ct. 788, apparently for the proposition that a warrantless search of an automobile subsequent to a lawful arrest is constitutionally valid if the search is for evidence connected with the crime for which the arrest was made. However, the holding of the Supreme Court in *Cooper* was not so broad as the majority opinion would lead us to believe. In *Cooper* the Supreme Court merely applied the *Rabinowitz* test, and held that the search itself was not "unreasonable." Indeed, the Supreme Court in *Cooper* dismissed the issue of whether the police should have obtained a search warrant by saying:

> "It is no answer to say that the police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonble.' *United States* v. *Rabinowitz*, 339 U. S. 56, 66, 94 L. Ed. 653, 660, 70 S. Ct. 430." 17 L. Ed. 2d 734.

Thus, it is abundantly clear that the Court's decision in *Cooper* was based on the reasonableness test of *Rabinowitz*, and not on the basis that the search of the petitioner's car was for evidence connected with the crime for which the arrest was made.

Moreover, the precedent value of *Cooper* has been seriously undermined, if not destroyed, by *Chimel* v. *California, supra*. As was pointed out above, *Cooper* applied the *Rabinowitz* test in holding that the search of the petitioner's car was not unreasonable. However, in *Chimel* the Supreme Court overruled both *Rabinowitz* and *Harris* v. *United States, supra*, by stating that:

> "It is time, for the reasons we have stated, to hold that on their own facts, and insofar as the principles they stand for are inconsistent with those that we have endorsed today, they are no longer to be followed." 23 L. Ed. 697.

In so doing the Supreme Court rejected the reasonableness test by overruling *Rabinowitz*. Since *Cooper* was decided on the basis of the reasonableness of the search, and since it relied on *Rabinowitz* for the conclusion that it was not neces-

sary to obtain a search warrant, and since *Chimel* rejected the reasonableness test and overruled *Rabinowitz,* it is impossible for me to understand how the majority opinion can still consider *Cooper* to be valid precedent. By overruling *Rabinowitz* the Supreme Court destroyed the legal foundation of *Cooper.*

The majority opinion points out that the Supreme Court in a footnote to *Chimel* stated:

"Our holding today is of course entirely consistent with the recognized principle that, assuming the existence of probable cause, automobiles and other vehicles may be searched without warrants *'where it is not practicable to secure a warrant* because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.'" (Emphasis supplied). 23 L. Ed. 2d 694.

After quoting the above passage from *Chimel* the majority opinion launches into a discussion of the existence of probable cause for arresting the appellant. The opinion then concludes that inasmuch as there was probable cause to arrest the appellant "The search in this case was proper under the above cited cases of the Supreme Court of the United States."

First of all, it was never contended that the arresting officers lacked probable cause to arrest the appellant. It is argued, however, that the mere existence of a valid arrest does not give *carte blanche* to carry out a search beyond the permissible scope defined in *Chimel,* which is the "Arrestee's person and the area within his immediate control." 23 L. Ed. 2d 694. Searches going beyond this scope "* * * in the absence of well recognized exceptions, may be made only under the authority of a search warrant." 23 L. Ed. 2d 694.

It is acknowledged that an exception to the general rule requiring search warrants exists where there is probable cause to conduct a search and the object searched is an automobile or other vehicle. This exception is plainly stated in the footnote to *Chimel* which is quoted both above and in the majority opinion. However, as was clearly stated by the Supreme Court

in the quoted passage, this exception *only* applies "\* \* \* where it is *not practicable* to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." 23 L. Ed. 2d 694. Thus, before an automobile may be searched pursuant to this exception to the general rule it must first have been impracticable to obtain a search warrant. Conversely, where it is practicable to obtain a search warrant, a warrantless search of an automobile or other vehicle must necessarily be invalid.

In the case at bar, it is impossible for me to conceive how it was "not practicable to secure a warrant" to search the appellant's automobile. The appellant, at the time of the warrantless search, was under arrest, handcuffed, and guarded by a policeman. There were also two additional policemen at the scene. The chances of the appellant fleeing in the car under those circumstances are extremely minimal, if not nonexistent. Moreover, the record is completely void of any evidence, or even a suggestion, that there was an accomplice in or near the appellant's automobile. Finally, the appellant being already under arrest it is certain that he was to be jailed, if for even a short period of time, and his car towed away from the Ohio Toll Road for purposes of traffic safety if for no other reason. Under these circumstances it defies credulity to understand how "it is not practicable to secure a warrant."

The majority opinion, however, does not even attempt to show how it was "not practicable to secure a warrant" in the present case. Indeed, the majority opinion completely fails to deal with this limitation to the exception to the general rule, even though the passage from *Chimel* quoted in the majority opinion clearly states that automobiles may be searched without a warrant only "where it is not practicable to secure a warrant."

Thus, far from supporting the position of the majority opinion in the case at bar, the quoted passage from *Chimel*

supports the contention of the appellant that the search here was illegal because not authorized by a valid search warrant.

The majority opinion concludes by saying: "The search in this case was proper under the above cited cases of the Supreme Court of the United States." Clearly, the search was not supported by *Chimel* for the above stated reasons. *Preston* v. *United States* (1964), 376 U. S. 364, 11 L. Ed. 2d 777, 84 S. Ct. 881, certainly does not support the search in the case at bar since there the Supreme Court held illegal the search of the petitioner's car while the petitioner was under arrest and in the custody of the police. This leaves us with only *Cooper*. As was previously demonstrated, however, the legal foundation of *Cooper* was the reasonableness test espoused in *Rabinowitz* and *Harris*. Since both of these cases have been overruled by the Supreme Court, and the reasonableness test rejected, it is impossible to understand how the majority opinion can still maintain that *Cooper* is valid precedent and is today good law.

Inasmuch as the search in the case at bar was illegal under the current case law, as decided by the Supreme Court of the United States, the judgment of the trial court should be reversed, and the cause remanded with instructions to grant appellant's motion for a new trial.

NOTE.—Reported in 255 N. E. 2d 520.