THROOP; BARRETT *v*. STATE OF INDIANA.

[No. 667S23. Filed July 8, 1970. Rehearing denied September 14, 1970.]

*Badell & Malson,* of Rushville, for appellants.

*Theodore L. Sendak,* Attorney General, *Murray West,* Deputy Attorney General, for appellee.

GIVAN, J.—The appellants were charged by affidavit with the crime of breaking and entering with an intent to steal a safe, which crime is defined in Burns' Ind. Stat., 1956 Repl., § 10-702a.

Trial was had before the court without the intervention of a jury. The court found the defendants guilty as charged and sentenced each of them to the Indiana State Reformatory for a period of not less than five nor more than ten years and disfranchised each of them for a period of five years.

The evidence in this case is as follows:

Sometime during the early morning of June 19, 1966, a building owned by Foster & Foster, Inc., located at 618 Central Avenue, Connersville, Indiana, was broken into and a safe containing $44 was removed therefrom. That same morning a car owned by the Appellant William A. Throop in which both the appellants were riding became stuck in a ditch on a country road in Fayette County, Indiana. Wendell Richardson, a farmer living nearby, testified that sometime between 7:00 and 8:00 A.M. the appellants asked him to pull the car from the ditch with his tractor, which he did.

Mrs. Marcele Simpkins saw the car parked on the road shortly after 9:00 A.M. while she was on her way to church. At that time she wrote down the license number in a book she keeps in her car for that purpose. Later that morning Mrs. Simpkins' husband saw a safe, later identified as the safe which had been taken from Foster & Foster, Inc., in a small gully on his farm. The safe was found approximately a half city block from where Mrs. Simpkins had seen the automobile which she described as a red Chrysler convertible.

Police officers testified that on the afternoon of June 19, 1966, they kept the Appellant Throop's car under surveillance for several hours, having received its description and license number from Mrs. Simpkins. At approximately 5:00 P.M. that afternoon they arrested the appellants without a warrant, while they were riding in the automobile. They immediately

conducted a search of the Appellant Throop and found a key in his pocket which was later identified as a key to a night deposit money bag belonging to Foster & Foster, Inc. About one hour after the arrest the police officers without a search warrant took paint samples from Appellant Throop's automobile and also paint samples from the safe. Red paint matching the paint on appellant's car was removed from the safe, and gray paint matching the paint on the safe was taken from the automobile. The evidence also showed the appellants had been seen driving on the streets of Connersville between 4:15 and 5:00 A.M. on the morning of June 19, 1966, and that the store in question had not been broken into as late as between 4:00 and 4:30 that morning.

The appellants claimed the trial court erred in admitting into evidence over their objection the key taken from Appellant Throop and the paint samples taken from the car subsequent to the arrest.

Appellants claim that the search was illegal because the arrest was unlawful for the reason that the arresting officers lacked probable cause to arrest the appellants.

In view of the above evidence it seems obvious that the arresting officers had ample probable cause to believe that the appellants had committed a felony. Under the circumstances they were fully justified in making the arrest. *Patterson* v. *State* (1970), 253 Ind. 499, 255 N. E. 2d 520, 20 Ind. Dec. 290.

Appellants also claim the evidence obtained by search was erroneously admitted because no warrant was obtained by the officers prior to making the arrest, although they admit following the appellants around town for quite sometime prior to making the arrest. There is ample authority for the proposition that when it is practical for officers to obtain a warrant prior to an arrest, they should do so. However, it is pointed out that the evidence in this

case is that the crime was discovered early on Sunday morning, and the appellants were arrested around 5:00 o'clock Sunday afternoon. This was at a time when the courts were closed. In view of the amount of information which the officers had at the time of the arrest, it would be most unreasonable to hold that they should have waited until Monday morning in order to obtain a warrant before making the arrest. We also observe that even had this been at a time when the courts were open the appellants were driving in an automobile which the police officers had reasonable cause to believe had just been used in the perpetration of a felony. This would justify the arrest of the appellants without a warrant, for even a few minutes' delay in obtaining a warrant under these circumstances might result in the escape of the subjects. We hold that the officers were thoroughly justified in making the arrest without a warrant. *Patterson* v. *State, supra.*

An additional question is raised concerning the search of the automobile. The Supreme Court of the United States held in *Preston* v. *U. S.* (1964), 376 U. S. 364, 84 S. Ct. 881, 11 L. Ed. 2d 777, that it was improper for police officers to conduct a search of a motor vehicle without a warrant when their possession of the vehicle resulted from the taking of the owner into custody on a charge of vagrancy. This position, however, was further explained in the case of *Cooper* v. *Calif.* (1967), 386 U. S. 58, 87 S. Ct. 788, 17 L. Ed. 2d 730. The court pointed out that in situations such as found in *Preston* where the defendant is arrested on a charge unrelated to his operation of the motor vehicle, the fact that he was in a motor vehicle did not warrant the law enforcement officers' search of the vehicle without a search warrant. However, the court pointed out in the *Cooper* case that the officers had probable cause to believe that Cooper was actually using the motor vehicle as an instrument to facilitate the perpetration of his crime. The officers were then justified in conducting a search

of the motor vehicle in conjunction with the arrest. This court had occasion in a recent decision to discuss the *Preston* and *Cooper* decisions in detail. See *Patterson* v. *State, supra.*

In the case at bar the automobile was not searched until the officers had towed it to the garage. This, however, was entirely reasonable under the circumstances because the so-called search was not so much for the fruits of the crime as it was to obtain paint scrapings from the car and from the safe in question for comparison. This was the type of search which by its very nature had to be conducted in surroundings where laboratory techniques could be employed. The officers were justified in delaying this search long enough to insure that their tests could be made accurately. We hold that the rule laid down in *Cooper* and in *Patterson, supra,* are applicable in this case, and the taking of the car and the subsequent obtaining of paint scrapings therefrom was a type of search which the officers were entitled to conduct without first obtaining a search warrant. Good police work and in fact the safety of the public demands that when arrests are made under these circumstances the automobile in question be searched in conjunction with the arrest of the accused. See *McCoy* v. *State* (1958), 237 Ind. 654, 148 N. E. 2d 190.

Appellants also argue that the evidence in this case is unreasonable in that logic demonstrates the failure of the capacity of the appellants to accomplish the crime alleged. They point to the fact that they had been drinking intoxicating liquor at the time of their arrest, and that it is unreasonable to believe men in their condition could have carried a heavy safe up a flight of stairs and loaded it into an automobile, and then unloaded it several miles out in the country. We have repeatedly held that we will not weigh the evidence. *Kindred* v. *State* (1970), 254 Ind. 73, 257 N. E. 2d 667, 21 Ind. Dec. 196. The trial court heard this evidence, and we cannot say that there is a lack of logic

in the trial court's determination that the appellants could and did in fact accomplish the removal of the safe.

The decision of the trial court is affirmed.

Hunter, C.J., and Arterburn, J., concur; Jackson, J., dissents with opinion in which DeBruler, J., concurs.

## DISSENTING OPINION

JACKSON, J.—I am unable to concur in the majority opinion and dissent thereto.

This is an appeal from the judgment of the Fayette Circuit Court wherein the appellants were tried to the court without the intervention of a jury, and convicted of the crime of safe-burglary as defined by Acts 1905, ch. 169, § 374a, as added by Acts 1955, ch. 156, § 1, p. 307, being Ind. Ann. Stat. § 10-702a (1956 Repl.).

The affidavit under which the appellants were charged reads, in pertinent part, as follows:

"Kenneth Lundsford, being on his oath first duly sworn, deposes and says, on information and belief, that one William A. Throop and Thomas Barrett, late of said county on the 19th day of June, 1966, at the County of Fayette, State of Indiana did then and there unlawfully, feloniously and burglariously break and enter into the building of Foster and Foster, Inc., then and there situate at 618 Central Avenue, Connersville, Indiana, with intent to commit a felony, to-wit: unlawfully and feloniously to take and steal a safe, to-wit: one Underwriter's Laboratories Inc. Relocking Device (Serial No. 170005) owned by said Foster and Foster, Inc., and said safe did then and there contain money in the sum of forty-four ($44.00) Dollars and other things of value, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Indiana."

Upon conviction the appellants, and each of them, were sentenced to the Indiana State Reformatory for a period of not less than five (5) nor more than ten (10) years and disfranchised for a period of five years.

On January 12, 1967, the appellants filed their Motion for New Trial in which it was alleged that (1) the finding of the court is contrary to law, (2) the court's finding was not sustained by sufficient evidence, and (3) the trial court erred in overruling the appellants' motion to suppress certain evidence which was alleged to have been illegally seized. The motion for a new trial was overruled by the trial court on March 27, 1967.

On appeal the appellants' sole assignment of error is that the trial court erred in overruling the appellants' motion for new trial.

From the evidence adduced at trial it appears that some time during the early morning of June 19, 1966, the car in which the appellants were riding, owned by the appellant William Throop, was stuck in a ditch on a rural road in Fayette County, Indiana. A farmer living nearby testified that the appellant sometime between 7:00 and 8:00 a.m. asked him to pull the car from the ditch with his tractor, which he did. Another witness testified that she saw the car parked on the road shortly after 9:00 that morning while she was on her way to church. She stated that she wrote down the license number in a book which she keeps in the car for that purpose.

Later that morning a farmer, and the husband of the woman who testified as to seeing the car and recording the license number, saw a safe in a small gulley on his farm. His wife stated that the safe was approximately one half a city block from where she saw the appellant's red Chrysler convertible. The farmer stated that he paid particular attention to the safe since whoever put it there had to cut a hole in the fence to do so. He also said that he telephoned the sheriff when he returned home after discovering the safe. During the ensuing investigation his wife gave the police the license number of the appellant's car.

On the afternoon of June 19, 1966, the Connersville police kept the appellant Throop's car under surveillance for several

hours. They arrested the appellants, without a warrant, at approximately 5:00 p.m. while the appellants were riding in Throop's car. In a warrantless search accompanying the arrest a key was taken from Throop's pocket. This key was later identified as the key to a night deposit money bag belonging to the same furniture store from which the safe was taken.

Almost one hour subsequent to the arrest the police, without a search warrant, took paint samples from the appellant Throop's car. At this same time they also took paint samples from the safe. From the safe they took pieces of red paint which matched the paint on the appellant's car. From the car they took pieces of gray paint which matched the paint on the safe.

Further testimony revealed that the appellants, along with one other person, were seen driving on the streets of Connersville sometime between 4:15 and 5.00 a.m. on the morning of June 19, 1966. Moreover, there was evidence to show that the furniture store had not been broken into as late as between 4:00 and 4:30 that morning.

The appellants contend on appeal that the trial court erred in admitting into evidence, over the appellants' objections, the key taken from the appellant Throop and the paint samples taken from the car subsequent to the arrest. The State argues that the appellants have waived this argument since they failed to set out, in the argument section of their brief, transcript references to the evidence, and for the further reason that they failed to set out the specific objection to the evidence in their motion for a new trial.

This Court has, however, followed the policy of deciding appeals on their merits where it is practicable for us to do so and when the issues have been clearly placed before us. *Locke* v. *State* (1969), 252 Ind. 480, 250 N. E. 2d 372; *Lytle* v. *State* (1968), 251 Ind. 413, 241 N. E. 2d 366. Furthermore, inasmuch as Supreme Court Rule P. C. 2 authorizes a post

conviction remedy to cure defects in an "inadequate" motion for a new trial, our refusal now to deal with the issues of this case on their merits would merely create additional burdens on this Court and the trial court at a later date. I will therefore consider this appeal on its merits.

The appellants concede that the law permits an arresting officer to conduct a limited search of an arrestee, without a search warrant, when the limited search is pursuant to a lawful arrest. *Chimel* v. *California* (1969), 395 U. S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685. Further, evidence seized pursuant to such a search is admissible at trial. The appellants contend, however, that the search in the case at bar was illegal since the arrest on which it was based was unlawful for the reason that the arresting officers lacked probable cause to arrest the appellants.

In deciding questions of this nature, where the determination of probable cause was made solely by a law enforcement officer and not by a neutral and detached magistrate, reviewing courts are required to apply a more stringent test for determining probable cause than in those cases where a search or seizure was pursuant to a warrant issued on the basis of a magistrate's determination of probable cause. *Aguilar* v. *Texas* (1964), 378 U. S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723.

A review of the record in the case at bar reveals that the appellants' arrest was based on information that the appellants' car was stuck in a ditch on a rural road a short distance from where a safe was found in a shallow gulley. Also, the same car was seen that morning parked at the side of the road approximately one-half a city block from where the safe was found. Further information available to the arresting officers at the time of the arrest was that the appellants were driving around Connersville between 4:30 and 5:00 a.m., and that the furniture store had not been entered as late as between 4:00 and 4:30 a.m.

Perhaps, if the *only* basis for the arrest was that the

appellants were seen driving down the rural road close to where the safe was found then the result reached would be different. However, that is not the case here. Here, the information available to the arresting officers indicates something more than chance presence in the vicinity where the safe was found. The statements of two different people placed the appellants on two different occasions and at two different places near to where the safe was found a short time before it was found. Moreover, the arresting officers knew that the appellants had been in the vicinity of the furniture store shortly before that store was burglarized and the safe taken. Therefore, while a jury could possibly find the above evidence insufficient to convict the appellants, I cannot say as a matter of law that the information available to the arresting officers was insufficient to form a basis for probable cause to arrest the appellants.

The appellants argue that the arrest was invalid for the reason that the police failed to obtain a warrant even though they had ample time in which to get one. I agree with the appellants that the policy of the courts is to enforce the constitutional requirement that arrest warrants be obtained where it is practicable to do so. Under the particular facts in the case at bar, however, I cannot say that the appellants' arrest was invalid because the arresting officers did not obtain an arrest warrant. The appellants were arrested at 5:00 on a Sunday afternoon while they were driving in the appellant Throop's car. It being a Sunday afternoon, the courts were not open and thus a magistrate may not have been available to rule on the existence of probable cause, or issue a warrant for the arrest of appellants. Moreover, as the appellants were driving in the car it was reasonable for the officers to take precautions to prevent the suspects from fleeing the jurisdiction. Thus, having probable cause to arrest the appellants, and possibly being unable to obtain a warrant because of the courts being closed, I cannot say that the officers' lack of a warrant invalidated the appellants' arrest.

Since the arrest of the appellants was valid, and since the search pursuant to the arrest was limited to a search of the appellants and the area within their immediate control and possession, the trial court did not err in admitting into evidence the key found during the search. *Chimel* v. *California*, *supra*.

A different problem arises, however, with respect to the search of the appellant Throop's car one hour after the appellants were arrested and after the car had been impounded by the police.

After the appellants had been placed under arrest, the car in which they were riding, the same car identified as being near the spot where the safe was found earlier in the day, was towed to a local junk yard and there impounded by the police. The safe had been taken earlier to this same junk yard. After the car had been towed to the yard and approximately one hour after the appellants were arrested, the car was searched, without a warrant, by law enforcement officers. According to the testimony of the Fayette County Sheriff, who participated in the investigation, the purpose of the search was to "* * * see whether there was any evidence in the car that showed that the safe had been in the car." (Tr. p. 44, ll. 2-5) Also, to "* * * detect whether or not there was any evidence * * *." (Tr. p. 44, l. 24) Another officer investigating the burglary testified that while searching the trunk of the car he "* * * scraped some gray paint off of the molding—the lower molding * * *."

In *Preston* v. *United States* (1964), 376 U. S. 364, 84 S. Ct. 881, 11 L. Ed. 2d 777, the petitioner and two other persons were arrested for vagrancy, searched for weapons, and taken to police headquarters. The car was ultimately taken to a garage. While at the garage and while the petitioner was in jail, a police officer searched the car, without a search warrant, and seized certain items found in the trunk of the car. In reversing the petitioner's conviction the Supreme Court said: "Our

cases make it clear that searches of motor cars must meet the test of reasonableness under the Fourth Amendment before evidence obtained as a result of such searches is admissible." 11 L. Ed. 2d 780.

In ruling that the search of the petitioner's car was illegal, and the evidence seized was inadmissible at trial, the Court said:

> "The search of the car was not undertaken until petitioner and his companions had been arrested and taken in custody to the police station and the car had been towed to the garage. At this point there was no danger that any of the men arrested could have used any weapons in the car or could have destroyed any evidence of a crime— assuming that there are articles which can be the 'fruits' or 'implements' of the crime of vagrancy. Cf. *United States* v. *Jeffers*, 342 US 48, 51-52, 96 L ed 59, 64, 72 S Ct 93 (1951). Nor, since the men were under arrest at the police station and the car was in police custody at a garage, was there any danger that the car would be moved out of the locality or jurisdiction. See *Carroll* v. *United States, supra*, 267 US, at 153, 69 L ed at 551. We think that the search was too remote in time or place to have been made as incidental to the arrest and conclude, therefore, that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible." 11 L. Ed. 2d 781.

In the case at bar, just as in *Preston*, the search of the car was not conducted until the appellants were in jail in police custody, and the car had been taken to the junk yard in the custody of the police. Therefore, applying the rule set out above in *Preston* v. *United States, supra,* and recently reiterated in *Chimel* v. *California, supra,* I am of the opinion that the search of the appellant Throop's car, without a warrant and under the circumstances outlined above, was illegal as being in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States, as well as Article I, Section 11 of the Constitution of the State of Indiana. Accordingly, the evidence obtained pursuant to the

illegal search was inadmissible and it was reversible error for the trial court to allow the paint scrapings into evidence over the appellants' objections.

In so holding I do not ignore the case of *Cooper* v. *California* (1967), 386 U. S. 58, 87 S. Ct. 788, 17 L. Ed. 2d 730. It is my opinion, however, that *Cooper*, on its face, is clearly distinguishable from the case at bar. In *Cooper* just as in *Preston*, the petitioner's car was searched while the petitioner was under arrest and in police custody at the stationhouse, and after the car was taken in police custody to a garage. In *Cooper*, however, the officers seized the car because they were required to do so by state statute. Section 11611 of the California Health and Safety Code provides that vehicles used in the sale, transportation, storage, etc. of narcotics are "to be held as evidence until a forfeiture has been declared or a release ordered." Since the police were required by state law to retain the vehicle until forfeiture proceedings were concluded, the Supreme Court ruled that it would be unreasonable for the police to hold the car for several months and yet be unable to search it "even for their own protection." See, *Ramon* v. *Cupp* (1970), 423 F. 2d 248; *Scott* v. *State* (1970), (Nev.), 465 P. 2d 620.

In the case at bar, just as in *Preston*, there is no state statute requiring the police to impound vehicles and hold them in custody until some future date. Thus, on its facts the case at bar is far more similar to *Preston* than it is to *Cooper*. Further, since the appellant's car was not taken into custody and held pursuant to a state statute, *Cooper* is not controlling.

There are those who would argue that the search of the car trunk in the instant case could be justified on the basis of the arresting officers inventorying the possessions of the owner of the car to protect themselves from possible allegations that, upon return of the car to the owner, items were missing from the car. I point out that the constitutional validity of the so-called "inventory" is highly doubtful, in

that under the guise of an "inventory" the mandate of *Preston* v. *United States, supra,* would be seriously undermined. Moreover, the Fourth Amendment is concerned with substance and not form. It specifies that conduct in which law enforcement officers may not engage. It cannot be frustrated by semantic niceties. It makes little difference whether police conduct be termed a search or an inventory. Where law enforcement officers pry into the private possessions of an accused, and their activities penetrate those areas where a citizen has a right to the Fourth Amendment protection of privacy, then the conduct of the police officers, whether that conduct is termed a search or an "inventory," must meet with Fourth Amendment requirements as determined by the Supreme Court of the United States.

In the case at bar, however, the testimony of the investigating officers precludes the State from even contending that the search of the car trunk was an "inventory." By the officers' own testimony, they were searching the trunk for evidence.

For the foregoing reasons, I think it clear that this case is controlled by *Preston* v. *United States, supra,* and that the search of the car trunk without a warrant while the appellants were in jail in police custody and after the car had been towed to a junk yard and was in police custody was an illegal search. In so holding, I am being entirely consistent with a number of recent decisions of other jurisdictions dealing with the precise issue presented in the case at bar. See: *Ramon* v. *Cupp, supra; Wood* v. *Crouse* (10th Cr. 1969), 417 F. 2d 394; *Colosimo* v. *Perini* (6th Cir. 1969), 415 F. 2d 804; *Scott* v. *State, supra; State* v. *Madden* (1970), (Ariz.), 465 P. 2d 363.

The judgment of the trial court should be reversed and the cause remanded with instructions to grant the appellants' motion for a new trial.

DeBruler, J., concurs.

NOTE.—Report in 259 N. E. 2d 875.