GENE MAY *v.* STATE OF INDIANA.

[No. 372A148. Filed November 16, 1972. Rehearing December 18, 1972.]

76

76

*Lee F. Mellinger, Pressler, Mellinger & MacKenzie,* of Elkhart, for appellant.

*Theodore L. Sendak,* Attorney General, *Stephen J. Cuthbert,* Deputy Attorney General, for appellee.

HOFFMAN, C.J.—This appeal is from a conviction of the crime of unlawful sale of a dangerous drug. Two issues are here presented: 1) whether a variance between the affidavit of probable cause and the proof is fatal to the conviction of the defendant; and 2) whether the defendant was a victim of entrapment.

Defendant-May was charged by affidavit and tried to a jury which found him guilty of the crime of unlawful sale of a dangerous drug as charged in the affidavit. Judgment was entered by the trial court that the defendant was guilty of the unlawful sale of a dangerous drug, and the defendant was fined in the penal sum of $1,000 and sentenced to be

imprisoned in the State Prison for not less than one year nor more than ten years. The motion to correct errors filed by defendant-May was overruled by the trial court and this appeal followed.

The facts which are pertinent to this appeal may be summarized from the record before us as follows:

Louis M. Cinko, an undercover agent for the Indiana State Police, met a man named Terry Walls at the North Webster Police Station. Cinko and Walls went to the defendant's residence where they entered, were introduced to the other people in the house and sat down on the sofa. Cinko testified that the defendant asked Walls "if I [Cinko] was all right," Walls answered, "Yes," and May asked Walls "to go into another room with him to have a conversation." May then came back and asked Cinko how much he wanted. Cinko answered, "Ten hits," to which defendant-May replied that he only had "nine" hits which he would sell for $2.25 "a hit." Cinko then purchased nine tablets which were found by the Indiana State Police laboratory to be "LSD."

On appeal the first allegation of error argued by appellant-May is that a variance between the affidavit of probable cause[1] and the proof is fatal to the conviction.

The affidavit of Louis M. Cinko provided the basis from which the warrant for the arrest of the defendant was issued. Such affidavit, in pertinent part, stated:

"6. That affiant did take the nine 'hits' of acid which he purchased from said Gene May to the Indiana State Police Post at Ligonier, Indiana, and gave said acid to Donald Moody, a lab technician who field tested said LSD and said Donald Moody informed affiant that this field test indicated that said substance contained D-Lysergic Acid Diethylamide, commonly called LSD."

The variance between the above-quoted portion of the affidavit for probable cause and the proof is found in the

---

1. Appellant does not allege a variance between the charging affidavit (information) and the proof. See: *Boyd* v. *State* (1971), 256 Ind. 22, 266 N.E.2d 802.

following testimony which was elicited, on direct examination, of Cinko:

"Q. What, then did you do with the LSD that you had purchased?

"A. I locked it up at my residence until I took—kept it under lock and key until I took it to the State Police Laboratory at Indianapolis and gave it to one of the technicians, James Forbes."

It is appellant's contention that the State's chief witness, Cinko, impeached himself "to prove the State's case in chief."

The record before us clearly shows that appellant sought to impeach the credibility of Cinko on cross-examination as follows:

"Q. Now, did you sign an affidavit of probable cause in this case?

"A. Yes, sir; I did.

"Q. * * * Now, which statement is correct?

"A. The affidavit is incorrect, sir.

* * *

"Q. You signed that under oath, sir—did you not?

"A. Yes, sir; I did.

"Q. Well, if you can sign this under oath 'Subscribed to and sworn before me' enough to get a man arrested, how am I suppose to believe you now? No further questions."

This particular contention goes merely to the weight to be given to the testimony, not to the admissability of the evidence. If Cinko's credibility was shaken in the eyes of the jury, such impeachment would have been in favor of defendant-May. The discrepancy between the in-court testimony of Cinko and the contradictory statement contained in the affidavit for probable cause was for the jury to evaluate. Furthermore, the record before us indicates that no objection was made to the witness' alleged attempt to "impeach himself."

Appellant also contends that the discrepancy between the affidavit of probable cause and the proof constitutes a break in the chain of custody of the evidence.

The in-court testimony of Cinko establishes the requisite chain of custody. See: *Graham* v. *State* (1970), 253 Ind. 525, 255 N.E.2d 652, 656, 20 Ind. Dec. 343. Cinko testified that he took the "LSD" he had purchased and put it under lock and key at his residence until August 30, 1971, at 3:30 P.M., at which time he took it to the State Police Laboratory in Indianapolis and handed it personally to one of the technicians, James Forbes. Cinko further testified that on October 25, 1971, he received the package from Forbes and transported it from the laboratory in Indianapolis to his residence and locked it up until the day of trial.

James Forbes testified that he received the envelope containing the evidence from Cinko on August 30, 1971, at 3:30 P.M., and that the envelope was in the vault in the laboratory until October 25, 1971, when Cinko picked it up. Forbes identified the envelope as that which had been in his possession. The chain of possession was properly established and the evidence was properly admitted.

The second issue argued in this appeal is whether appellant-May was a victim of entrapment.

The law of this jurisdiction regarding the defense of entrapment is ably set forth in the following decisions of our Supreme Court. *Smith* v. *State* (1972), 258 Ind. 415, 281 N.E.2d 803; *Walker* v. *State* (1970), 255 Ind. 65, 262 N.E.2d 641, 23 Ind. Dec. 104; *Gray* v. *State* (1967), 249 Ind. 629, 231 N.E.2d 793, 12 Ind. Dec. 218. Generally, these cases hold that where the idea of committing a crime originated with law enforcement officers or their agents, and the accused had no previous intent to violate the law but is induced by the police or their agents to commit a crime, he is the victim of entrapment. In such cases, the prosecution of the crime is estopped by sound public policy. However, where an accused already had the readiness

and willingness to break the law, the fact that the police provide a favorable opportunity to commit a crime is not entrapment.

In *Walker* and *Smith* our Supreme Court further defined the law of entrapment based on *Heath* v. *United States* (10th Cir. 1948), 169 Fed. 2d 1007, which states at 1010, as follows:

> "It is well recognized that officers may entrap one into the commission of an offense only when they have reasonable grounds to believe that he is engaged in unlawful activities. They may not initiate the intent and purpose of the violation." (Footnote omitted.)

Thus, in summary, entrapment occurs when the police or agents under their control incite, induce, instigate or lure a person into committing an offense which he otherwise would not have committed and had no intention of committing. *Sherman* v. *United States* (1958), 356 U.S. 369, 78 S. Ct. 819, 2 L. Ed. 2d 848; *Sorrells* v. *United States* (1932), 287 U.S. 435, 53 S. Ct. 210, 77 L. Ed. 413. However, where there is entrapment the prosecution of the crime will not be estopped where the police can show probable cause for their suspicions. *Smith* v. *State, supra.* In such cases hearsay evidence may be admitted, not to prove the guilt of the defendant, but to establish probable cause. *Walker* v. *State, supra.*

In the instant case, there is evidence that Cinko went to the house of appellant-May in the course of an investigation, and that upon entering the house the occupants started passing around and smoking a pipe of marijuana. May then asked Walls, the informer, if Cinko "was all right," and then asked Walls to go into another room with him to have a conversation. Upon returning May said something to Cinko to the effect that " 'I'm sorry, but you have to be kind of careful,' " and asked Cinko how much he wanted. The above testimony along with the other testimony contained in the record before us is sufficient probative evidence from which the jury could have concluded that the State met its burden of proving be-

yond a reasonable doubt that the defendant was ready and willing to sell "LSD," and, therefore, was not entrapped.

The judgment of the trial court convicting appellant-May of the crime of unlawful sale of a dangerous drug is affirmed.

Sharp and Staton, JJ., concur.

NOTE.—Reported at 289 N.E.2d 135.