**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Henry Ogle WATSON, Defendant-**
**Appellant.**

**No. 73-1539.**

United States Court of Appeals,
Ninth Circuit.

March 20, 1974.

Rehearing Denied March 20, 1974.

Certiorari Granted Feb. 18, 1975.
See 95 S.Ct. 1117.

Alfred T. Goodwin, Circuit Judge, dissented and filed opinion.

Michael D. Nasatir (argued), of Nasatir, Sherman & Hirsch, Beverly Hills, Cal., for defendant-appellant.

Michael T. Kenney, Asst. U. S. Atty. (argued), William D. Keller, U. S. Atty., Eric A. Nobles, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before ELY and GOODWIN, Circuit Judges, and MURRAY,* District Judge.

WILLIAM D. MURRAY, District Judge:

An indictment was filed against the appellant on September 11, 1972, alleging a four count violation of 18 U.S.C. § 1708 (stealing from the mails). Count 1 alleged a violation on August 23, 1972; Count 2 alleged a violation on August 17, 1972; Count 3 alleged a violation on August 23, 1972; and Count 4 alleged a violation on May 28, 1971. The appellant was ultimately tried on Counts 1, 2 and 3. Count 4 was dismissed. The jury returned a verdict of guilty as to Counts 1 and 3, and not guilty as to Count 2.

On the day of the trial, the district court heard motions to suppress evidence pursuant to Rule 41(c) Federal Rules of Criminal Procedure and a motion to determine the voluntariness of any post-arrest statements pursuant to Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). In response to these motions, the government called Frank L. Barbarick, a U. S. Postal Inspector, as a witness. Inspector Barbarick testified that he was contacted on the telephone by one Awad Khoury on August 17, 1972. He knew Khoury as

---

* The Honorable W. D. Murray, United States District Judge for the District of Montana, sitting by designation.

Tony and had previous contacts with him from five to ten times. In the course of these prior contacts, Khoury related information concerning appellant Watson and his associates. This information was found to be reliable by Inspector Barbarick.

In the August 17, 1972, phone call, Khoury advised the Inspector that he, Khoury, was going to receive a Bank of America credit card from appellant Watson. The card was in the name of Syed T. Ahmad. Barbarick told Khoury to bring the credit card to Barbarick's office when he received it from Watson. Later on that day, Khoury brought the credit card into Barbarick's office. Khoury said that he had received this card from appellant and that appellant wanted him to purchase TWA airline tickets. Khoury also showed Inspector Barbarick a slip of paper that gave names and addresses for the airline tickets to be purchased. Inspector Barbarick told Khoury to arrange a meeting with appellant Watson. Khoury advised Barbarick that a meeting was scheduled for August 22, 1972, but this meeting did not take place. A meeting with Watson on August 23 similarly did not take place. Finally, a meeting between Khoury and Watson was set up for noon on the 23rd of August at Ship's Restaurant in Los Angeles. Barbarick testified that he told Khoury to determine at the meeting whether Watson had any additional credit cards in his possession. If Watson did have some additional cards, Khoury was to light a cigarette as a signal to Postal Inspectors inside the restaurant. These inspectors would then activate a signal alerting Inspector Bar-

barick outside the restaurant. Upon receiving the prearranged signal Barbarick and other inspectors entered the restaurant and placed the defendant under arrest, advising him that he was under arrest for possession of stolen mail. Inspector Barbarick then asked Watson if he could look in his car. Watson said "Go ahead." Using the key to the car which Watson had turned over, Barbarick opened the car and searched. Under the floormat on the driver's side he recovered an envelope. Inspector Barbarick's later testimony indicated that the envelope which he discovered was not opened until he returned to his office in downtown Los Angeles. At that time he found that two smaller envelopes were contained inside the larger envelope and that it was these two envelopes which contained the credit cards which are the source of the allegations in Counts 1 and 2. In making the arrest the inspector testified he was relying on the evidence acquired on August 17, 1972, which was six days prior to arrest.

■ In his initial argument, appellant raises the strictly technical point that a stipulation [1] which his attorney and the United States Attorney intended to introduce was never affirmatively or competently entered into or accepted by the court and that, consequently there is an absence of proof.

The record reveals that both parties, the court and the jury all were under the impression that the stipulation had been entered in the record. The agreement to stipulate was communicated to the court prior to the empanelling of the jury. The stipulation was read to the

---

1. The stipulation read as follows: "That on or about August 14th of 1972, Bank-Americard Corporation sent through the mails three credit cards in separate envelopes, with separate addresses on them. That these three separate and distinct credit cards and envelopes were addressed to, number one, a Marlene M. Steinberg, at 12407 Ohio Avenue in Los Angeles. And that her credit card number was 4024 681 187 691. In addition, another credit card on or about August 14, was sent by BankAmericard to one Syed T. Ahmed. And that was sent to 1502 Wellesley Avenue, in West Los Angeles. His credit card number was 4024 682 059 676. Another credit card was sent by BankAmericard through the mails to one Kenneth Sorensen of 12118 Ohio Avenue, in West Los Angeles. His credit card number was 4024 688 038 351." It was further stipulated that the individuals to whom these credit cards were addressed never received the credit card in question.

jury in the government's opening statement. The defense counsel referred to the stipulation during his cross-examination. The appellant himself made reference to the stipulation. Since all parties concerned were under the impression that the stipulation had been entered in the record, the defendant-appellant cannot be allowed to benefit from a purely technical error, if in fact there was error.

Appellant next contends that (A) the hearing on the motion to suppress failed to establish that the informant's reliability was sufficient to warrant use of his "tip"; (B) he contends that the failure to obtain an arrest warrant vitiates the arrest and subsequent seizure; and (C) he contends that a consent to search cannot be acquired during an illegal detention and that his consent was not shown to be voluntary and knowledgeable.

■ As to appellant's first contention, the Judge at the suppression hearing found that the informant's reliability had been established by the testimony of Inspector Barbarick and that the reliability standards of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 had been met. Inspector Barbarick testified that he had been contacted by Informant Khoury prior to August 17, 1972, on five to ten occasions and that Khoury had related information concerning appellant Watson and his associates and that the information supplied helped in knowing the whereabouts of people that were involved in mail theft throughout the Los Angeles area. There is sufficient evidence to support the trial judge's finding that Khoury was "reliable". Consequently, on August 17, 1972, when Khoury gave Barbarick the credit card which he said he had received from Watson, probable cause existed to arrest appellant Watson for mail theft.

■ Appellant's second contention has merit, i. e. the failure to obtain an arrest warrant vitiates the arrest. As stated above, Inspector Barbarick had probable cause to arrest appellant on the 17th of August, 1972. However, the arrest was not made until six days later— on the 23rd of August. There appears to be no reason for the failure to present the question to a detached magistrate to obtain an arrest warrant.

"The case of Warden v. Hayden, [387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782] where the Court elaborated a 'hot pursuit' justification for the police entry into the defendant's house without a warrant for his arrest, certainly stands by negative implication for the proposition that an arrest warrant is required in the absence of exigent circumstances." Coolidge v. New Hampshire, 403 U.S. 443, 480, 91 S.Ct. 2022, 2045, 29 L.Ed.2d 564. "[The warrant requirement] is not an inconvenience to be somehow 'weighed' against the claims of police efficiency. It is, or should be, an important working part of our machinery of government, operating as a matter of course to check the 'well-intentioned but mistakenly over-zealous executive officers' who are a part of any system of law enforcement." Coolidge, supra at 481, 91 S.Ct. at 2046. The government in this case has shown no "exigent" circumstances which would justify not obtaining an arrest warrant during the six day interim period between the 17th of August and the day of the actual arrest. The arrest of the appellant was in violation of the 4th Amendment to the U. S. Constitution.

Thirdly, appellant attacks the voluntariness of his consent to search. At the time appellant consented to the search, he was under arrest. Nothing in the record indicates that he knew of or was advised of his right not to consent to the search of his automobile.

At the time of the consent to the search of this car, the law of the Ninth Circuit required a showing that the defendant knew he could withhold his consent and a showing as to whether any consent was coerced or uncoerced. Schoepflin v. United States, 391 F.2d 390 (9th Cir. 1968). However, in

Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the Supreme Court, reversing an earlier decision by this court, 448 F.2d 699 (9th Cir. 1971), held that:

" . . . Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. . . . "

Recently, in United States v. Rothman, 492 F.2d 1260 (9th Cir., 1973), this court, conceding that *Schneckloth* is limited by its facts to cases in which the consenting party is not in custody, observed that we have never applied a different test for consent searches on the basis of the pre-consent arrest of the consenting party and held that "arrest is but one factor, albeit a critical one, in determining whether or not the consent was voluntary." 492 F.2d at 1264 n. 1. Hence, the Supreme Court's "totality of circumstances" test applies to all consent search situations, whether or not the consenting party is under arrest.

Here, we find that the totality of circumstances strongly suggests coercion. Appellant had been placed under arrest and was in custody at the time that he gave the officers permission to search his car.

" . . . In looking at the factual issue of voluntariness, the court must be aware of the 'vulnerable subjective state' of the defendant as well as the possibility of 'subtly coercive police questions.' Schneckloth v. Bustamonte, supra, 412 U.S. at 229, 93 S.Ct. 2041, 36 L.Ed.2d 854 and the inherently coercive nature of custodial interrogation, Id. at 247, 93 S.Ct. 2041, 36 L.Ed.2d 854." United States v. Rothman, 492 F.2d at 1265.

Not only was appellant Watson in custody, he was in custody in violation of the Fourth Amendment, since the agents had failed to obtain an arrest warrant. Moreover, in *Rothman,* where we held that the defendant had not properly consented to a search, the defendant admitted that he knew that he had a right to refuse. Here, nothing indicates that Watson knew or was advised of his right not to consent to the search of his automobile. Hence, in light of *Schneckloth* and *Rothman,* we hold that the in-custody search of the appellant was invalid, and the fruits of the search should have been suppressed.

In light of the above it is not necessary to discuss other issues raised.

Reversed.

ALFRED T. GOODWIN, Circuit Judge (dissenting):

I would affirm. I agree that the agents could have obtained an arrest warrant as early as six days before they arrested Watson, but it by no means follows that the arrest without a warrant was not lawful. I know of no case which holds that officers must make an arrest the moment they come into possession of enough evidence to cause a magistrate to issue a warrant. United States v. Leon, 460 F.2d 299, 300 (9th Cir. 1972). There are many times when good law enforcement commends further investigation. At the time of Watson's arrest, a pre-arranged signal gave the officers new knowledge that Watson was then in possession of additional stolen credit cards. This information alone would have justified a warrantless arrest at the time it was made.

Given a lawful arrest, the only basis Watson urged in the trial court for his motion to suppress the evidence collapses. I do not join in the majority's discussion of Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), as it is not responsive to any issue raised below or in the briefs and arguments on appeal.