PAT KELLEY A/K/A WILLARD PATRICK *v.* STATE OF INDIANA.

[No. 2-1073A140. Filed August 14, 1974. Rehearing denied October 22, 1974. Transfer denied February 26, 1975.]

*Patrick J. McNamara,* of Mishawaka, for appellant.

*Theodore L. Sendak,* Attorney General, *Larry C. Gossett,* Deputy Attorney General, for appellee.

HOFFMAN, C.J.—Defendant-appellant Pat Kelley, also known as Willard Patrick, was charged by affidavit in two counts with 1) possession of a narcotic drug, to-wit: heroin, and 2) sale of a narcotic drug, to-wit: heroin. To such charges appellant pleaded not guilty. Following trial before a jury, appellant was found guilty as charged in both counts of the affidavit and sentenced to the custody of the Indiana Department of Corrections for concurrent periods of not less than five years nor more than twenty years for the sale of a narcotic drug, and not less than two years nor more than ten years for possession of a narcotic drug. The trial court subsequently vacated the finding and sentence of guilty as to the charge of possession. Thereafter, appellant's motion to correct errors was overruled and this appeal was perfected.

The evidence most favorable to the State reveals that the South Bend Police Department had received information from private citizens concerning the existence of "drug traffic"

occurring at a particular residence in the City of South Bend. Additionally, an informant known as "Pooky" had disclosed knowledge that someone had purchased drugs from one Dot Jennings at the residence in question. On June 29, 1972, Officer LaVerne M. Dunlap who was at the time working with the South Bend Police Department, and the informant "Pooky", contacted Dot Jennings at her residence for the purpose of purchasing drugs. While inside the house, "Pooky" asked Dot Jennings "if she had anything." Jennings replied that she did not, but then called upstairs to a James Whiting and said, "James, come on downstairs and hit the streets because you have some business." Appellant Kelley accompanied James Whiting down the stairs and inquired as to how much Officer Dunlap wanted. The officer replied that she "only needed two caps." Thereafter, Dunlap, "Pooky", Whiting and the appellant proceeded to the appellant's residence in Officer Dunlap's automobile. Upon their arrival, the appellant stated, "Wait a minute and I'll be back in a few minutes." After a short time appellant returned from his house, gave two capsules to Officer Dunlap and stated that they would cost "$7 a cap." The officer then paid appellant $14 and subsequently proceeded with "Pooky" to the South Bend Police Station. A laboratory test established that the capsules contained heroin.

The first issue to be considered is whether the State established a sufficient chain of custody with regard to the seized heroin.

The purpose of establishing a chain of custody concerning seized evidence is to show a complete chain of possession from the original receiver to the final custodian and thus lay a proper foundation connecting the evidence in question with the accused. The rule pertaining to chain of custody was succinctly set forth by Justice Hunter, speaking for our Supreme Court, in *Graham* v. *State* (1970), 253 Ind. 525, at 533, 255 N.E.2d 652, at 656, wherein it is stated:

"*[W]here as in the case of seized or purchased narcotics, the object offered in evidence has passed out of the possession of the original receiver and into the possession of others, a chain of possession must be established to avoid any claim of substitution, tampering or mistake, and failure to submit such proof may result in the exclusion of the evidence or testimony as to its characteristics.* Where such evidence or testimony is improperly introduced and is prejudicial to the party against whom it is directed, then the judgment of the trial court should be reversed." See also: *Butler* v. *State* (1972), 154 Ind. App. 361, 289 N.E.2d 772.

While a complete chain of custody must be established, the State is not required to exclude every remote possibility of tampering. *Kolb* v. *State* (1972), 258 Ind. 469, 282 N.E.2d 541. Where the State has introduced evidence which strongly suggests the whereabouts of an exhibit at all times, such evidence will often be considered as sufficient for chain of custody purposes. *Guthrie* v. *State* (1970), 254 Ind. 356, 260 N.E.2d 579; *Butler* v. *State, supra.*

A further examination of the record in the present case reveals that upon her arrival at the South Bend Police Station, Officer Dunlap placed the two capsules in question in a manila envelope which she dated, initialed and sealed in the presence of a Sergeant Richard Thomas. Sergeant Thomas also initialed and dated the envelope before placing it in a safe located in the narcotics office.

Only Sergeant Thomas and a Sergeant Forrest Milbourne had access to the narcotics safe. Observing that the envelope had not been tampered with, Sergeant Thomas removed the envelope which he placed in the safe on July 7, 1972. He then typed a letter of transmittal which requested the contents of the envelope be analyzed and identified. This letter was addressed to the Bureau of Narcotics and Dangerous Drugs. He personally delivered the envelope and letter to a Mr. Stubbs of the Chicago laboratory who then placed a date-time stamp on the envelope, along with the case number and laboratory

number. Although Sergeant Thomas did not personally observe the envelope being placed in the laboratory vault, it was standard procedure to do so.

Terry Allen Dalcason, a forensic chemist for the laboratory, testified that on July 10, 1972, he removed the envelope from the vault for analysis. He further testified that there had been no tampering with the envelope in question and the seal remained closed. After concluding that the capsules contained heroin, Dalcason placed the two capsules in a small plastic container and sealed it. He next put an "Avery evidence label" on the plastic container, signed and dated it. Dalcason then placed the plastic container inside the original manila envelope, resealed the envelope with another evidence seal and returned it to the vault.

On July 17, 1972, Sergeant Thomas returned to the Chicago laboratory. He reclaimed the envelope in its sealed condition and obtained a letter describing the contents of the two capsules. Upon his return to the South Bend Police Station, Sergeant Thomas again placed the manila envelope in the narcotics safe where it remained until the date of trial.

Appellant Kelley contends that a sufficient chain of custody was not established for the period from July 7, 1972 to July 10, 1972.

In *Kolb* v. *State, supra,* the circumstances surrounding the whereabouts of a narcotics exhibit indicate a more incomplete accountability and, therefore, greater possibility of tampering than in the present case. The facts in *Kolb* reveal that a bag of marijuana was given to an Officer Jackson by another officer without an identification mark having been placed on the bag. Officer Jackson then passed the bag to an Officer Bennett. Officer Bennett subsequently placed the exhibit in his locker at the Princeton, Indiana Police Department where it remained for approximately 35 days. The bag was thereafter placed in a match box, wrapped in paper and sent to the Indiana State Police Laboratory. It was received the next day in Indianapolis and the time of receipt was entered in

a log book. The bag and its contents were analyzed at an undetermined time and subsequently placed in the property room until the time of trial. It was noted that other persons had access to the property during the time in which it was in the laboratory and the property room although there was an explanation as to the presence of the exhibit for each day in question. Upon these facts, our Supreme Court stated that "the location of the bag during the days in question [had] been sufficiently accounted for." *Id.* at 478 of 258 Ind., at 546 of 282 N.E.2d.

Further, in *Butler* v. *State, supra,* there was a failure to disclose precisely who deposited an exhibit in a narcotics vault although it was reported that the exhibit was placed in the vault at a certain time on a particular date; that it was removed from the vault for analysis approximately 93 days later and that it was returned to the vault on the same day after analysis was completed. This court concluded in *Butler* that there was no break in the chain of custody.

In the instant case, appellant's only potential claim to a break in the chain of custody is that it was not disclosed who placed the exhibit into the safe at the Chicago laboratory or at what point in time it was deposited therein. However, the evidence with regard to the exhibit's whereabouts is more complete than that found to be sufficient in *Kolb* v. *State, supra,* and very similar to that which this court found to be adequate in *Butler* v. *State, supra.* Unlike *Graham* v. *State, supra,* in which the location of an exhibit during a six-day period was never explained and where there was a total absence of any evidence which would shed light on the exhibit's disposition during that time, in the case at bar there is no missing link in the chain of custody nor any evidence or inference of tampering, loss, or mistake with respect to the manila envelope containing the two capsules.

The second issue presented is whether the defense of entrapment is available to the appellant.

In this regard, our inquiry need not extend beyond an

examination of the case of *Thompson* v. *State* (1972), 259 Ind. 587, 290 N.E.2d 724. Therein at 590 of 259 Ind., at 726 of 290 N.E.2d, Chief Justice Arterburn, speaking for our Supreme Court, stated:

> "It should be noted that the facts of this case involve an unusual situation for a claim of entrapment. Normally, *the initial suspect becomes the ultimate defendant. See e.g.* Sherman v. United States (1958), 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848; Sorrells v. United States (1932), 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249. Gray v. State, (1967), 249 Ind. 629, 231 N.E.2d 641; cf. Walker v. State (1970), [255 Ind. 65], 262 N.E.2d 641; *See generally* Note, 38 Notre Dame Law, 741 (1962-63). In this case, however, *a previously unsuspected third-party stranger, whom no one intended to trap, is the ultimate defendant.*"

The court in *Thompson* v. *State, supra,* adopted the reasoning which is set forth in *United States* v. *DeLoache* (W.D. Mo. 1969), 304 F.Supp. 183, at 186, as follows:

> "[T]he doctrine of entrapment 'does not extend to acts of inducement on the part of a private citizen who is not an officer of the law.' [Citations omitted.] Where a third party, who does not know the true identity of the Government agent, unwittingly leads the Government agent to the defendant, there is no entrapment because it is the third party who induces the initial violation, not the Government agent. Therefore, the Government is not 'the initiator of the defendant's illegal acts in the sense of having induced the defendant to do what the defendant would otherwise not have been willing to do.' [Citations omitted.]"

In the case at bar, the prime suspect, Dot Jennings, called to James Whiting when she was asked "if she had anything." Appellant's subsequent inquiry as to "how much" Officer Dunlap needed was, to the extent that the record reveals, unsolicited by either the officer or her companion, "Pooky." In view of the holding in *Thompson* v. *State, supra,* it must be concluded that under the facts presented in the record before us, there could be no entrapment of appellant Kelley.

No reversible error having been demonstrated, the judgment of conviction appealed from is affirmed.

Affirmed.

Garrard and Staton, JJ., concur.

NOTE.—Reported at 315 N.E.2d 382.