WALTER PAYNE, JR. *v.* STATE OF INDIANA.

[No. 3-674A98. Filed March 11, 1976. Rehearing denied May 26, 1976. Transfer denied October 12, 1976.]

John J. Roper, Chapleau, Roper, McInerny, Minczeski & Farabaugh, of South Bend, for appellant.

Theodore L. Sendak, Attorney General, Douglas W. Meyer, Deputy Attorney General, for appellee.

STATON, P.J.—A jury found Walter E. Payne, Jr. guilty of possessing marijuana which was in violation of IC 1971, 16-6-8-3(c) (Burns Code Ed.). Payne was fined $700.00 and sentenced to imprisonment for a term of not less than one (1) year nor more than ten (10) years. His motion to correct errors raises these issues on appeal:

(1) Should the initial issue of the voluntariness of Payne's waiver of rights and subsequent confession have been decided in the presence of the jury?

(2) Was there probable cause to suspect Payne's criminal activity when the police set up a plan to buy marijuana from him?

(3) Was Payne's motion to suppress the marijuana evidence improperly overruled?

(4) Was a sufficient chain of custody established to warrant admission of the marijuana into evidence?

(5) Did the trial court err in admitting oral testimony regarding marijuana seized in a vehicle in Long Beach, Indiana?

We conclude that the trial court erred when it determined the initial question of voluntariness in the presence of the jury. It is the opinion of the majority of this court, not including the author of this opinion, that this cause should be remanded to the trial court for a hearing on the issue of voluntariness. If the trial court, on remand, makes an independent determination that the waiver of rights statement and the subsequent confession were voluntary, then the judgment of conviction must be affirmed, since we find no reversible error in the remaining issues presented for our review. If, however, the trial court on remand finds the confession involuntary, Payne's conviction must be set aside, and a new trial must be granted.

## I.

### Voluntariness of Confession

The State's first witness, Sergeant Abraham, testified that Payne had been informed of his rights before signing a written waiver of rights form which indicated that he was willing to talk to the police. The State then asked Abraham what Payne said after the waiver was signed. Payne's defense counsel objected to any testimony about conversations after the waiver was signed for the reason that neither the waiver of rights nor any subsequent statements were shown to have been voluntarily made. The trial court treated the initial question of voluntariness as a question for the jury and, in the presence of the jury, permitted evidence to be heard.[1]

---

1. "THE COURT: I think it can be resolved at this point by asking the witness what happened, where it happened, what time it happened, who asked the questions, who responded, was the conversation between

At the conclusion of the evidence, which included the voir dire of Sergeant Abraham,[2] the trial court overruled the objection. Abraham testified that Payne confessed his ownership of marijuana found in his suitcase.

IC 1971, 35-5-5-1 (Burns Code Ed.) mandates the trial court to hear evidence out of the presence and hearing of the jury to determine any issue as to voluntariness before admitting confessions[3] in evidence:

"In any criminal prosecution brought by the state of Indiana, a confession, as defined in section (5) [35-5-5-5] hereof, shall be admissible in evidence if it is voluntarily given. *Before such confession is received in evidence, the trial judge shall, out of the presence and hearing of the jury, determine any issue as to voluntariness.* If the trial judge determines that the confession was voluntarily made, it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances." (emphasis added).

The trial court's action, determining voluntariness in the presence of the jury, constituted a violation of section 35-5-5-1, as well as a violation of Payne's fifth and fourteenth amendment rights. *Jackson* v. *Denno* (1964), 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.[4] The only remaining question is the disposition of the case in the face of this error.

---

the witness and the defendant. I presume we all know what time it was, where it was, what room it was and who was present, but I am not sure what impression the jury is getting.

"MR. ROPER: Also whether or not the statement was given voluntarily

"THE COURT: You have the right to cross examine and also have the right, if you choose, to put your client on the stand. This is a question for the jury."

2. Payne's defense counsel asked Abraham if he had any conversation with Payne, prior to the signing of the waiver, regarding the fact that Payne's mother or wife might be arrested unless he cooperated. Abraham denied having any such conversations.

3. A confession is defined as "any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing." IC 1971, 35-5-5-5 (Burns Code Ed.).

4. We might affirm Payne's conviction if we could determine that both the statutory error and the federal constitutional error were harmless beyond a reasonable doubt under the facts of this case. *See*

In *Jackson* v. *Denno, supra,* petitioner Jackson filed a petition for habeas corpus in the federal district court asserting that his New York conviction was invalid because it was founded on a confession not properly determined to have been voluntary. Consistent with the New York practice when a question was raised about the voluntariness of a confession, the trial court had submitted the issue to the jury.[5] The United States Supreme Court concluded that the New York procedure was inadequate to "insure a reliable and clear-cut determination" of voluntariness "unbeclouded by other issues and the effect of extraneous but prejudicial evidence." 378 U.S. at 390, 391, 84 S.Ct. at 1788, 12 L.Ed. at 923, 924. The Supreme Court determined that Jackson was entitled to a full evidentiary hearing in the New York courts to determine the factual context of Jackson's confession. The Court said:

"It does not follow, however, that Jackson is automatically entitled to a complete new trial including a retrial of the

*Chapman* v. *California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Harrington* v. *California* (1969), 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; *Greer* v. *State* (1969), 252 Ind. 20, 245 N.E.2d 158; *Moreno* v *.State* (1975), 166 Ind. App. 441, 336 N.E.2d 675; *Moss* v. *State* (1975), 165 Ind. App. 502, 333 N.E.2d 141; *Larimer* v. *State* (1975), 163 Ind. App. 673, 326 N.E.2d 277. Aside from Payne's confession, only informer Kaeding's testimony directly established Payne's possession of the suitcase containing marijuana. Kaeding's testimony was supported only by the circumstantial evidence that Payne carried the suitcase from a house to Kaeding's car. Without the confession, Payne's conviction would have been based primarily on the credibility of informer Kaeding. Other testimony was introduced to impeach Kaeding and to establish his reputation in the community for moral turpitude. We cannot say, in light of the powerful probative impact of Payne's confession of guilt and the questionable probative impact of the remaining evidence absent the confession, that, "beyond a reasonable doubt, an honest and fair-minded jury would have rendered a guilty verdict based solely on the remaining . . . evidence." *Larimer* v. *State, supra,* 326 N.E.2d at 279. Thus, we cannot say that any error in the introduction of the confession was harmless beyond a reasonable doubt. Without the confession, the case against Payne was not overwhelming.

5. Under the New York rule, the trial judge was required to make a preliminary determination and to exclude a confession if under no circumstances could it be deemed voluntary. However, any question as to voluntariness was left to the jury. The jury was instructed that if it found the confession involuntary, it was to disregard it entirely; if, on the other hand, it found the confession voluntary, it was to determine its truth or reliability and afford it weight accordingly. *Jackson* v. *Denno, supra,* 387 U.S. at 374-75, 84 S.Ct. at 1779, 12 L.Ed.2d at 914.

issue of guilt or innocence. Jackson's position before the District Court, and here, is that the issue of his confession should not have been decided by the convicting jury but should have been determined in a proceeding separate and apart from the body trying guilt or innocence. So far we agree and hold that he is now entitled to such a hearing in the state court. But if at the conclusion of such an evidentiary hearing in the state court on the coercion issue, it is determined that Jackson's confession was voluntarily given, admissible in evidence, and properly to be considered by the jury, we see no constitutional necessity at that point for proceeding with a new trial, for Jackson has already been tried by a jury with the confession placed before it and has been found guilty. True, the jury in the first trial was permitted to deal with the issue of voluntariness and we do not know whether the conviction rested upon the confession; but if it did, there is no constitutional prejudice to Jackson from the New York procedure if the confession is now properly found to be voluntary and therefore admissible. If the jury relied upon it, it was entitled to do so. Of course, if the state court, at an evidentiary hearing, redetermines the facts and decides that Jackson's confession was involuntary, there must be a new trial on guilt or innocence without the confession's being admitted in evidence." 378 U.S. at 394, 84 S.Ct. at 1790, 12 L.Ed.2d at 925-26 (footnote omitted).

The Court further stated:

"It is both practical and desirable that in cases to be tried hereafter a proper determination of voluntariness be made prior to the admission of the confession to the jury which is adjudicating guilt or innocence. But as to Jackson, who has already been convicted and now seeks collateral relief, we cannot say that the Constitution requires a new trial if in a soundly conducted collateral proceeding, the confession which was admitted at the trial is fairly determined to be voluntary." Id. at 395-96, 84 S.Ct. at 1790-91, 12 L.Ed.2d at 926-27.

Clearly, Jackson stands for the proposition that an accused has a constitutional right "at some stage in the proceedings to object to the use of [his] confession and to have a fair hearing and a reliable determination on the issue of voluntariness." Id. at 376-77, 84 S.Ct. at 1780-81, 12 L.Ed.2d at 915. However, Jackson finds no con-

stitutional requirement that an accused, once tried and convicted at a trial at which his confession was considered by the jury, be given a new trial if, later, an independent and reliable determination is made that the confession was voluntary and, thus, was properly before the jury.

It is the opinion of this writer that, since *Jackson* only establishes the minimum to which an accused is constitutionally entitled, this Court must be bound by the procedure established by the Indiana legislature. IC 1971, 35-5-5-1 (Burns Code Ed.) clearly requires that the independent and reliable determination of voluntariness be made "[b]efore such confession is received in evidence." A new trial is necessary to comply with the statute, which is mandatory. Remanding this case for an evidentiary hearing on the issue of voluntariness may remedy any constitutional defects in the trial court's procedure, but will not correct the trial court's disregard of the legislative mandate that the hearing be held before the confession is received into evidence. I would grant Payne a new trial in the face of the trial court's error.

It is the opinion of the majority of this Court, however, that Payne is first entitled only to an evidentiary hearing on the issue of voluntariness. If it is determined at this evidentiary hearing that Payne's confession was voluntary, then no prejudicial error was committed at trial when the confession was received in evidence. Of course, if the trial court determines after hearing that the confession was involuntary, a new trial will be required, since Payne's conviction on the basis of an involuntary confession cannot stand. *Rogers* v. *Richmond* (1961), 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760; *Payne* v. *Arkansas* (1958), 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed. 975. The majority reasons that, pursuant to *Jackson,* remand for such a hearing is constitutionally acceptable. Further, so long as Payne receives an independent and reliable determination of the voluntariness of his confession, out of the presence of the jury, he cannot establish harm from the trial court's error.

The case is remanded for an evidentiary hearing on the issue of the voluntariness of Payne's confession, consistent with the majority views expressed herein. If the trial court finds the confession involuntary, Payne's conviction should be set aside and Payne should be granted a new trial. If the trial court finds the confession voluntary, Payne's conviction is affirmed, since we find no reversible error in the remaining issues presented for our review.

## II.

### Entrapment

On the basis of information supplied by informer Kaeding, the police decided to set up a controlled buy of marijuana from Payne. Payne contends that the police had no probable cause to suspect that he was engaged in illegal conduct; therefore, the police had no reasonable basis to set up the plan to buy marijuana from him. The State responds that informer Kaeding supplied the probable cause to suspect that Payne was dealing with and in possession of drugs.

The substantive defense of entrapment arises when "the idea of committing a crime originated with law enforcement officers or their agents, and the accused had no previous intent to violate the law but is induced by the police or their agents to commit a crime." *May* v. *State* (1972), 154 Ind. App. 75, 289 N.E.2d 135, 137-38. See *Smith* v. *State* (1972), 258 Ind. 415, 281 N.E.2d 803; *Walker* v. *State* (1970), 255 Ind. 65, 262 N.E.2d 641; *Fischer* v. *State* (1974), 160 Ind. App. 641, 312 N.E.2d 904. This substantive defense goes to the merits of the charge against the defendant and is a factual question to be resolved by the jury. *Locklayer* v. *State* (1974), 162 Ind. App. 64, 317 N.E. 2d 868.

The jury was instructed on the defense of entrapment, and it denied the defense by returning a verdict of guilty. Payne does not contest the jury's verdict.

When the defendant raises the defense of entrapment, the State must introduce evidence establishing that, before the initiation of the transaction which is alleged to be entrapment, the law enforcement agents had information which supplied probable cause to suspect that the accused was engaged in illegal activities. *Hauk* v. *State* (1974), 160 Ind. App. 390, 312 N.E.2d 92; *Smith* v. *State, supra; Walker* v. *State, supra; Locklayer* v. *State, supra.* In Indiana, the probable cause for "baiting the trap" issue is a question separate and distinct from the substantive entrapment issue and is a matter of law for the trial court's determination. *Walker* v. *State, supra; Locklayer* v. *State, supra.* The State's failure to establish probable cause precludes the use of the work product of the scheme. *Smith* v. *State, supra; Locklayer* v. *State, supra.*

The trial court overruled Payne's objection to the introduction of the marijuana evidence and implicitly determined as a matter of law that the police had probable cause to suspect that Payne was engaged in illegal activities. The question before this Court is whether the evidence is sufficient to support the trial court's determination. We conclude that it is.

Probable cause to suspect Payne's illegal activities was based solely on the information supplied by informer Kaeding. He informed the police of Payne's past dealing in marijuana on a quantity basis and Payne's frequent visits to Michigan City. We conclude that the information supplied by informer Kaeding was sufficiently extensive and reliable to form the necessary probable cause.

We recognize that informer's tips may vary greatly in value and reliability. What may be sufficient indicia of reliability to justify one type of police action may be insufficient to justify another. *See Adams* v. *Williams* (1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612. We also recognize that informers are frequently used in the enforcement of narcotics laws and that their use has been

approved by our courts upon a showing of reliability. *See Wagner* v. *State* (1968), 249 Ind. 457, 233 N.E.2d 236.

The reliability test is most often stated in cases discussing probable cause to arrest:

"While probable cause may be supported and indeed created by information supplied by an informer, it must be demonstrated that the probability of accuracy of the 'tip' is sufficiently high. That is, the informer must be shown to be reliable. One manner of doing this is by referring to his past record of reliability. Another is by reference to extrinsic facts, including those which he may relate, to test his accuracy." *Bowles* v. *State* (1971), 256 Ind. 27, 30, 267 N.E.2d 56, 58, *citing McCray* v. *Illinois* (1967), 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62; *Draper* v. *United States* (1959), 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; *United States* v. *Franke* (7th Cir. 1969), 409 F.2d 958; *Weigel* v. *State* (1969), 252 Ind. 464, 250 N.E.2d 368.

An arrest is a significantly more severe invasion of a person's constitutionally protected rights than a plan to set up an opportunity to commit a crime. An arrest involves an invasion of privacy by seizure and often search of the accused's body. A scheme to trap a particular suspect also involves an invasion of privacy by the infiltration of police agents into the group of the accused's friends and acquaintances, but this invasion cannot be said to be as intrusive as an arrest or a detention of the person. Thus the probable cause tests differ. To bait a trap, the police must have probable cause to *suspect* criminal activity; to effect an arrest, the police must have probable cause to *reasonably believe* that a crime has been or is being committed. *Stuck* v. *State* (1970), 255 Ind. 350, 264 N.E.2d 611. The degree of credibility required when information must be sufficient to justify a suspicion of criminal activity is less than that required when information must be sufficient to justify a reasonable belief that criminal activity has occurred or is occurring. *Locklayer* v. *State, supra,* 317 N.E.2d at 872 n.3.

When the police officers set up the plan to buy marijuana from Payne, there were no extrinsic facts available to test

informer Kaeding's credibility. However, Kaeding was not an anonymous informer whose past reliability could not be independently determined. *Compare Bowles v. State, supra; Jackson v. State* (1973), 157 Ind. App. 662, 301 N.E.2d 370 (anonymous informers not shown to be reliable). Kaeding was personally known to two officers involved in the investigation. The officers had grown up in the same neighborhood only two blocks from Kaeding's family home and had known Kaeding for over twenty-seven years. The officers testified that during that time Kaeding had no previous charges against him and had always been honest in his answers to police inquiries. We conclude that the trial court could have found Kaeding's information sufficiently reliable and credible to establish probable cause to suspect Payne's criminal activity.

## III.

### *Suppression of the Evidence*

Seven pounds of marijuana and a scale were admitted into evidence over Payne's objections. The marijuana and scale were in a green suitcase which was found in the informer Kaeding's car. Payne contends that this evidence is the fruit of an illegal search, since the police were without probable cause to arrest him without a warrant. He further contends that the evidence was not so mobile as to fall within an exception to the search warrant requirement.

The State contends that Payne has no standing to object to the search, since the vehicle in which the suitcase was found belonged to informer Kaeding who consented to the search. Further, the State contends that there was probable cause to seize known contraband. It relies upon the information supplied by informer Kaeding, and the exigent circumstances.

## A. Standing

The right to object to an unreasonable search and seizure of property is personal. A violation of a third party's constitutional rights by unreasonable search and seizure cannot be claimed by an accused as a ground for suppression. *Butler* v. *State* (1972), 154 Ind. App. 361, 289 N.E.2d 772; *Kirkland* v. *State* (1968), 249 Ind. 305, 232 N.E.2d 365. The standing requirement is satisfied when the defendant establishes a possessory interest in the property searched or when possession of the seized property is an essential element of the offense. *Jones* v. *United States* (1960), 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; *Burton* v. *State* (1973), 260 Ind. 94, 292 N.E.2d 790. Since possession of the marijuana contained in the suitcase is an essential element of the offense in the present case, Payne has standing to object to the search and seizure of the suitcase and its contents.

## B. Probable Cause to Arrest

In Indiana, an arrest warrant must be obtained whenever practicable. *Stuck* v. *State* (1970), 255 Ind. 350, 264 N.E.2d 611; *Throop* v. *State* (1970), 254 Ind. 342, 259 N.E. 2d 875; *Bryant* v. *State* (1973), 157 Ind. App. 198, 299 N.E.2d 200. An exception to the arrest warrant requirement arises when there is probable cause to arrest, coupled with exigent circumstances making the obtaining of an arrest warrant impracticable. *Stuck* v. *State, supra; Bryant* v. *State, supra.*[6] It is the exigent circumstances that

6. In a recent decision, *United States* v. *Watson* (1976), 423 U.S. 411, 96 S.Ct. 820, 46 L. Ed. 2d 598, 44 U.S.L.W. 4112, *reversing* 504 F.2d 849 (9th Cir. 1974), the United States Supreme Court upheld a postal inspection statute which allowed warrantless arrests for felonies if the arresting officer had "reasonable grounds to believe that the person to be arrested has committed or is committing such a felony." 18 U.S.C. § 3061(a). The Court held that the fourth amendment permits warrantless arrests for felonies upon probable cause without regard to the existence of exigent circumstances:

"Congress has plainly decided against conditioning warrantless arrest power on proof of exigent circumstances. Law enforcement officers may find it wise to seek arrest warrants where practicable to do so, and their judgments about probable cause may be more readily accepted where backed by a warrant issued by a magistrate. . . . But we

justify the substitution of the police officer's on-the-spot judgment as to probable cause for the judgment of an impartial judicial officers issuing a warrant.

Probable cause to arrest exists "where facts and circumstances are known to an arresting officer, or he has sufficiently trustworthy information of them, to reasonably lead him to believe that a crime has been or is being committed." *Stuck* v. *State, supra,* 255 Ind. at 356-57, 264 N.E.2d at 614. Exigent circumstances exist when the police officer has reasonable cause to believe that a crime is being committed in his presence. *Von Hauger* v. *State* (1970), 254 Ind. 69, 257 N.E.2d 669; *Williams* v. *State* (1969), 253 Ind. 316, 253 N.E.2d 242. Exigent circumstances may also exist when the suspect is traveling in a moving vehicle which may quickly and easily transport him from the jurisdiction.

Probable cause to arrest may exist upon information supplied by a reliable informer. *Wagner* v. *State* (1968), 249 Ind. 457, 233 N.E.2d 236. Reliability may be shown by reference to the informer's past record of reliability or by extrinsic facts proving the informer's information reliable. *Bowles* v. *State* (1971), 256 Ind. 27, 267 N.E.2d 56. See the discussion in Section II *supra.*

We conclude that the arrest without a warrant was justified. When informer Kaeding's vehicle turned west on Second Street, this was a prearranged signal to the police that the vehicle contained marijuana. In addition to Kaeding's past relationship with the police and his past record of trustworthiness, there were extrinsic facts available to the officers by which to test the reliability of Kaeding's information: Payne had arrived in Michigan City; Kaeding told the police

decline to transform this judicial preference into a constitutional rule when the judgment of the Nation and Congress has for so long been to authorize warrantless public arrests on probable cause rather than to encumber criminal prosecutions with endless litigation with respect to the existence of exigent circumstances, whether it was practicable to get a warrant, whether the suspect was about to flee and the like." 96 S. Ct. at 827, 44 U.S.L.W. at 4115-16 (citations and footnote omitted).

that he was to meet Payne at a Lake Shore Drive address; an officer followed Kaeding to this address, and saw him enter a residence and emerge with Payne; and an officer observed Payne carrying the large green suitcase described by Kaeding. These extrinsic facts verified part of the information supplied by Kaeding. Further, Kaeding had no reason to turn west on Second Street if there was no marijuana in the car. When Kaeding turned on Second Street as arranged, the police were justified in reasonably believing that contraband was contained in the vehicle.

The exigent circumstances of the moving vehicle coupled with probable cause to believe that the vehicle contained contraband justified the arrest without a warrant.

## C. Scope of the Search

The police officers placed Payne under arrest and seized the large green suitcase from the rear of Kaeding's car without a warrant. The scope of a search incident to a valid arrest is generally limited to a search of the person of the arrestee and the area within his immediate control to which he could reach for weapons or to destroy evidence.[7] *Chimel* v. *California* (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. However, when the exigent circumstance of a movable vehicle is combined with probable cause to believe that seizable contraband items are contained within that movable vehicle, the inherent necessities of the circumstances permit a search of the entire vehicle and its contents within regard to the officer's safety or the possible destruction of evidence. *See Chambers* v. *Maroney* (1970), 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; *Carroll* v. *United States* (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; *Paxton* v. *State* (1970), 255 Ind. 264, 263 N.E.2d 636.

7. The United States Supreme Court in *United States* v. *Robinson* (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427, and *Gustafson* v. *Florida* (1973), 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456, held that a thorough search of the person incident to a valid custodial arrest needs no independent justification apart from the arrest.

Kaeding's car was temporarily stopped. It could have abruptly left the scene. The green suitcase could have been taken out of the car and hidden from the officer's view or could have fallen into the hands of others. We conclude that there was sufficient evidence of probable cause and exigent circumstances to support the trial court's determination that the search without a warrant was justified.

Since the warrantless arrest of Payne and the warrantless search of the suitcase were valid, the motion to suppress the evidence obtained as a result of the arrest and search was properly overruled.

## IV.  *Chain of Custody*

Payne contends that all the evidence seized from the suitcase should have been excluded because there was evidence that the contents of the suitcase were tampered with by the addition of informer Kaeding's marijuana while the suitcase was in police custody. Payne's contention is without merit. In the present case, there is no missing link in the chain of custody, and there is no suggestion of tampering or loss.[8] *See Graham* v. *State* (1970), 253 Ind. 525, 255 N.E.2d 652; *Kelley* v. *State* (1974), 161 Ind. App. 253, 315 N.E.2d 382, *transfer denied*, 324 N.E.2d 158 (1975), for a discussion of the purpose of the chain of custody rule. Officer Johnson testified that he marked and separately identified nine bags of marijuana and other items within the suitcase shortly after the suitcase was obtained from Kaeding's car.[9] Officer Johnson turned the suitcase over to Sergeant Abraham, who kept the suitcase and its contents in his exclusive possession in a locked evidence cabinet. Abraham later released the suitcase to Officer Johnson, who took the suitcase

8. Payne suggests that Kaeding's marijuana was commingled with the marijuana in the suitcase because the suitcase and its contents were identified by a case number assigned to "Defendant Walter Payne and Lance Kaeding." The inference to be drawn from this evidence alone is clearly insufficient to establish tampering.

9. Apparently, one other bag of marijuana, retrieved from Payne's car at another location, was marked, identified, and placed in the suitcase. However, this bag was not introduced into evidence.

and its contents to the lab for testing and then returned the suitcase to Abraham. Thereafter, the suitcase and its contents remained in locked cabinets. The testimony of various custodians established a complete and unbroken chain of custody. Nine bags of marijuana were introduced into evidence at trial.

Our review of the record discloses no evidence of tampering. We conclude that the evidence was properly admitted at trial.

## V. *Admission of Oral Testimony*

Shortly after Payne was arrested on July 26, 1972, he signed a waiver of rights form and was questioned by the police. He confessed his ownership of a suitcase containing marijuana and, in response to an inquiry about any other marijuana in his possession, informed the police that he had another pound in his car in Long Beach, Indiana. Payne consented to a search of this car, and, later on July 26, 1972, the police went to Long Beach and retrieved this other bag.

On August 1, 1972, Payne was formally charged by affidavit with possession of seven pounds of marijuana in LaPorte County, Indiana, on July 26, 1972. This affidavit was accompanied by a supporting affidavit which specified that Payne was in possession of seven pounds of marijuana at Second and Wabash Streets in Michigan City, Indiana, at 8:15 p.m. on July 26, 1972. Both Michigan City and Long Beach are in LaPorte County.

At trial, the State introduced into evidence the suitcase and its contents, and introduced expert testimony that there was a little over seven pounds of marijuana in the suitcase. The State did not offer evidence that the bag found in Payne's car contained marijuana and did not introduce this bag into evidence. There was, however, oral testimony concerning this other bag and how it was retrieved. Payne objected to this testimony on the ground that proof of Payne's possession of this other bag constituted proof of a crime separate and distinct from the crime of possessing marijuana at Second

and Wabash Streets, the crime with which Payne was charged, such that there was a material variation between the charging affidavit and the proof presented at trial which misled Payne in the preparation of his defense.

The State argued that Payne was charged with possession of marijuana in LaPorte County on July 26, 1972, and that it was immaterial whether the marijuana was found in Payne's car or in the suitcase. Further, the State argued that the testimony concerning the retrieval of this other bag was relevant to the issue of the voluntariness of Payne's waiver of rights and subsequent confession of ownership of the suitcase.

After the testimony was admitted and after the State had identified the bag as State's Exhibit #14, the court admonished the jury as follows:

"THE COURT: The jury is admonished to disregard State's Exhibit Number 14, which appeared to be a bag of some crumbled leaf-like material alleged to be marijuana, or believed to be marijuana; to totally disregard it and any comment or testimony surrounding that particular State's Exhibit Number 14, except that it would tend to indicate or not tend to indicate the defendant's willingness to cooperate with the police department after the arrest on the date of the alleged crime at Wabash and 2nd Streets. Is that clear?"

It is clear that one crime cannot be proved to establish another distinct crime. *Sumpter* v. *State* (1974), 261 Ind. 471, 306 N.E.2d 95; *Layton* v. *State* (1966), 248 Ind. 52, 221 N.E.2d 881. In the present case, the particular crime with which Payne was charged was possession of marijuana in LaPorte County, Indiana, on July 26, 1972. The purpose of a charging affidavit is to inform the accused of the specific offense against him in order that he may adequately prepare his defense. *Wilson* v. *State* (1975), 164 Ind. App. 665, 330 N.E.2d 356. By the terms of the charging affidavit, Payne was informed that he was charged with possession of any marijuana seized from his possession on

July 26, 1972.[10] Any prejudice to Payne which may have resulted from the fact that the supporting affidavit referred to the specific location of Second and Wabash Streets was doubtless mitigated by the trial court's admonishment to the jury to consider the testimony concerning this other bag only for the limited purpose of showing Payne's willingness to cooperate with the police on the date of the offense.

This cause is remanded to the trial court for a full evidentiary hearing on the issue of the voluntariness of Payne's confession of ownership of the suitcase and for further proceedings consistent with the majority views expressed in this opinion.

Garrard, J., concurs with opinion; Hoffman, J., concurs as to Issue I, Issue III, Issue IV and Issue V. Concurs in result as to Issue II; also concurring in concurring opinion of Judge Garrard.

## Concurring Opinion

GARRARD, J.—While I agree that the court erred in failing to hold a voluntariness hearing regarding Payne's confession, and further agree with resolution of Issues III, IV and V, my analysis of the entrapment issue differs from that of Judge Staton.

Under the decisions of this state and the majority opinions of the United States Supreme Court, entrapment presents a question to be determined by the trier of fact. It exists when the government, through its agents, engages in a scheme to trap a suspect and entices, lures or induces the accused into committing an offense he *would not otherwise* have committed. It does not exist where the government agent merely affords the would-be criminal opportunity for his crime. *Sorrells* v. *U.S.* (1932), 287 U.S. 435; *U.S.* v. *Russell* (1973), 411 U.S. 423; *Walker* v. *State* (1970), 255 Ind. 65, 262 N.E.2d 641.

---

10. The fact that there was a little over eight pounds of marijuana in Payne's possession, instead of seven pounds, would not amount to a material variation between the affidavit and the proof.

Accordingly, under this view, the inquiry is focused upon the subjective intent of the defendant. The problem is one of evidence, not substantive law, i.e., is there sufficient evidence of probative value from which the trier of fact may reasonably infer beyond a reasonable doubt that the defendant possessed the requisite independent intent?

While such proof may often consist of evidence of a defendant's prior convictions for the same kind of misconduct, or of prior acts of such misconduct, although no prosecution was had, there is no apparent reason to limit the state's proof to this kind of predisposition evidence. Circumstantial evidence giving rise to the necessary inference of intent might also be found in such things as the defendant's possession of such a large quantity of contraband that the purpose of selling might be inferred. Knowledge of prices on the criminal market and of sources of supply; possession of apparatus for manufacture; the manner of the sale itself and the defendant's readiness to participate; solicitations, assurances or other conduct evincing the defendant's willingness or desire to engage in future sales; all these circumstances may be germane to the evidentiary issue. If the quantum of legitimate evidence supports the necessary inference of guilt, application of the subjective test would support conviction.

In addition, it should be noted that entrapment is a judicial doctrine which does not rise to constitutional proportions. *U.S.* v. *Russell, supra.*

Accordingly, it appears to me that entrapment as defined by the *Sorrells* majority contains no requirement that the government agents have cause to suspect a defendant before they determine to trap him.

However, in *Walker* v. *State* (1970), 255 Ind. 65, 262 N.E.2d 641, our Supreme Court spoke of such a requirement, stating,

"When appellant evoked the defense of entrapment he imposed upon the State the requirement of proving that it had probable cause of suspecting that the appellant was

engaged in illegal conduct." 255 Ind. 65, 71, 262 N.E.2d 641, 645.

While I have attempted to characterize this statement as merely intended to reflect the subjective intent test, I cannot do so.

In the first place, the statement in the opinion was made in justification of admitting hearsay evidence of the accused's predisposition to commit the kind of offense in question. The case was originally tried by the court without a jury. Thus, the court on appeal could have considered the hearsay admission harmless in light of the other evidence produced at trial and the presumption that in a trial by the court, the judge will properly disregard inadmissible evidence. Instead, the court chose to ground its ruling on the probable cause requirement.

Secondly, the evidence clearly established that on the occasion for which he was being tried, as well as on several previous occasions, it was the defendant who solicited the officers to buy, rather than they who solicited him to sell. Under such circumstances, the claim of entrapment in terms of independent intent is so improbable that the court could not have been misled into speaking of probable cause when it meant predisposition to commit the crime.

In this context, one can conclude only that Indiana does impose a separate requirement.

In addition, the court affirmed the probable cause requirement as an alternative ground for reversal in *Smith* v. *State* (1972), 258 Ind. 415, 281 N.E.2d 803.

The impact of this requirement must be other than the *Sorrells* requirement of ascertaining the defendant's independent intent. Otherwise, as long as the admissible evidence available was sufficient to clearly demonstrate the defendant's independent desire or willingness to engage in the prohibited conduct, it would simply be immaterial whether or not the

police had reasonable grounds to suspect him of criminal activity before they provided him an opportunity to commit the offense.

As alluded to by Judge Lybrook in *Hauk* v. *State* (1974), 160 Ind. App. 390, 312 N.E.2d 92, the only purpose that may be served by the rule is an examination, not of the accused's intent, but of the justification for the government to engage in *creative* activity. *See, Sherman* v. *U.S.* (1958), 356 U.S. 369.

While I do not believe such an inquiry is made necessary by the theory of the *Sorrells* majority,[1] we are, of course, bound by our Supreme Court's determination until it is changed or the consequences of its ruling are clarified.

Furthermore, I agree with the First District in *Locklayer* v. *State* (1974), 162 Ind. App. 64, 317 N.E.2d 868, that if, as the *Walker* court held, hearsay which is inadmissible to establish guilt is admissible to determine the probable cause issue, then it should be determined by the court in the absence of the jury as a question of law.[2]

Accordingly, as with similar determinations our criminal courts are called upon to make, where a defendant desires to rely upon entrapment as a defense and, additionally, questions whether the government agents possessed the reasonable suspicion that he was engaged in criminal conduct before the transaction for which he is prosecuted took place,[3] he may seek a hearing by the court for the purpose of determining the question of law thus presented.

However, in the absence of such an objection or request, either before trial, or when during trial it first appears that government agents engaged in creative activity in order to

---

1. A different question might be presented by the *nature* of the creative activity. *See Sherman* v. *U.S.* and *Russell* v. *U.S., supra.*

2. *Locklayer* relied upon *Walker* in this assertion. However, *Walker* arose on a trial by the court and the language in the majority opinion does not clearly mandate determination by the court as a question of law. *Smith* is silent on the point.

3. This appears to be the *Walker* test.

prosecute commission of the offense, the "probable cause" issue should be deemed waived for lack of objection.[4] *Cf. Tyler* v. *State* (1968), 250 Ind. 419, 236 N.E.2d 815; *Johnson* v. *State* (1972), 152 Ind. App. 104, 281 N.E.2d 922.

Thus, I do not agree that the trial court "implicitly" found that probable cause to suspect did exist. Instead, I conclude that because the question was not timely raised by Payne, it was waived.

NOTE.—Reported at 343 N.E.2d 325.

---

4.  The state, or the court, might also raise the question during the omnibus hearing-pretrial conference. IC 1971, 35-4.1-3-1. In the absence of pretrial disposition and the necessity of formally pleading entrapment, "first appearance" occurs when the evidence first establishes that commission of the offense on trial came about as the result of the implementation of a plan by a government agent to trap the accused.